SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------------------------------X

PAULETTE BYAS,

                Plaintiff,

  -against-

YONKERS PUBLIC SCHOOLS

                Defendants.
-------------------------------------------------------------------X

Index No.:

Date Purchased:

**SUMMONS**

Plaintiff designates Westchester County as the Place of Trial

The basis for venue is: Defendant's Principal Place of Business

Plaintiff resides at:
29 Washington Court
East Windsor, NJ 08520

To the above-named Defendant:

    You are hereby summoned to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons to serve a notice of appearance on the Plaintiffs' attorney within 20 days after service of the summons exclusive of the day of the service, where service is made by delivery upon you personally within the state, or within 30 days after completion of service where service is made in any other manner.  In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:  New York, New York
         June 15, 2023

STEWART LEE KARLIN
LAW GROUP, P.C.

_____
STEWART LEE KARLIN, ESQ.
*Attorneys for Plaintiffs*
111 John Street, 22nd Floor
New York, New York, 10038
(212) 792-9670
SLK@stewartkarlin.com

1

To: <u>Defendant</u>
Yonkers Public Schools
One Larkin Center
Yonkers, NY 10701

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------X
PAULETTE BYAS,

      Plaintiff,      **VERIFIED COMPLAINT**

 -against-         **Index No.:**

YONKERS PUBLIC SCHOOLS

      Defendants,
-----------------------------------------------------------------X

  Plaintiff, PAULETTE BYAS, by her attorney, STEWART LEE KARLIN, ESQ., for her complaint herein alleges as follows:

1. This is an action pursuant to the Title VII where Plaintiff alleges that Defendant discriminated and retaliated against her based on her race (African-American) and retaliation. This action seeks compensatory damages, including emotional distress, damages to Plaintiff's reputation; other damages; reasonable attorney fees plus the costs and disbursements of this lawsuit, and such other and further relief as the Court deems just and proper.

2. At all times hereinafter mentioned, plaintiff Paulette Byas (hereinafter mentioned "Plaintiff or Ms. Byas"), resides in the State of New Jersey. Plaintiff is an employee as defined by Title VII of the Civil Rights Act of 1964 42 U.S.C. 2000e et. seq. as amended.

3. Defendant Yonkers Public Schools (hereinafter referred to as the "District") is a school district under the laws of the State of New York, which is in charge of all public schools in the City of Yonkers. At all relevant times, Defendant is an "employer" as defined in Section 701(b) of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e(b) As such, Defendant is subject to the requirements of Title VII (42 U.S.C. § 2000e et seq.).

1

4. Jurisdiction is invoked pursuant to Title VII 42 U.S.C. 2000e et. seq, Plaintiff filed EEOC charges based on race discrimination and retaliation and a notice of right to sue letter was received within ninety days of the filing of this lawsuit conferring concurrent jurisdiction upon this Court.

5. At all times relevant in her career as a teacher, Plaintiff performed her responsibilities in an exemplary manner.

6. Plaintiff is employed as a teacher in the Yonkers Public Schools.

7. Plaintiff was subjected to disparate treatment and a hostile work environment due to her race (African-American) and retaliation for the reasons set forth below.

8. Principal Shaggura's adverse treatment of Black teachers and staff at Gorton High School has created an environment where African-American teachers are not given similar resources, training, and opportunities as other teachers and when concerns are raised and brought to his attention, prompt retaliation follows.

9. In approximately June 2019, Principal Shaggura asked Plaintiff whether she wanted the Science Department Chair position. He stated, "Anyone but Mr. Haughton." Plaintiff immediately told Mr. Shaggura "No." Plaintiff knew that he wanted to remove Mr. Haughton, another Black teacher from the position without just cause. Mr. Haughton has a long history of highly effective rating and was doing an excellent job leading the Science Department. Also, Mr. Haughton has been with the district close to 20 years and he has appropriate training and experience including certification in building leadership.

10. Mr. Shaggura had wrongly accused Mr. Haughton of dismissing students before the bell, a claim disproved by video recording and Mr. Shaggura was not making similar attempts to

2

replace the Math Department Chair (a white female teacher), even though the Math scores were lower than Science. Plaintiff saw no justifiable reason for Mr. Shaggura seeking to remove Mr. Haughton and she felt that, if she took the Chair position, Mr. Shaggura would treat and regard her as he was doing Mr. Haughton.

11. Due to Mr. Shaggura's actions outlined above, Plaintiff sent him an email on November 5, 2020 expressing heartfelt concerns because she saw that Mr. Shaggura was using Ms. Fanek to undermine and marginalize Mr. Haughton. She saw how it was affecting the cohesiveness and team spirit of the Science Department and how these actions could jeopardize student success (11/5/2020 email attached).

12. After Mr. Shaggura read my November 5, 2020 email, witnesses observed him darting out of his office and declaring, "Who the fuck Ms. Byas thinks she is. I will make Fanek the department rep today if I want!"

13. Mr. Shaggura's decision to have "anyone but" Mr. Haughton as the Science Department Chair is partly the reason that he provides only Ms. Fanek with resources, opportunities, and trainings that other science teachers, including myself, have not received. Ms. Fanek is the only teacher in the science Dep with a promethean board, camera covering her board, and other resources and training. Ms. Fanek was a non-tenured teacher at the time.

14. Mr. Shaggura retaliated against Plaintiff after he received her November 5, 2020 email. Although the email was addressed to him and Mr. Morales, to date, he has not responded, or discussed, the substance of the email. Instead, he continues to treat Ms. Fanek in a more favorably than he does Plaintiff.

3

15. On Friday November 6th, 2020 Mr. Morales came to room to discuss Plaintiff's email. Plaintiff expressed that specific conduct was discriminatory, and retaliatory, and that she feared retaliation in the form of schedule change, etc. Mr. Morales stated that the leaders at Gorton had the authority to make the moves they made and will continue to make moves with Ms. Fanek. The nature, aspect, content, and circumstances of Mr. Morales' presentation to me was retaliatory, because no attempt was made to address the concerns outlined in my November 5th, 2020 email.

16. On November 10, 2020, Mr. Shaggura took further retaliatory (adverse) actions.

17. At the start of the school year, Plaintiff's schedule included prep time during first period. This first prep period afforded her the opportunity to prepare to teach two subjects (Living Environment and Forensics). Mr. Shaggura and Mr. Morales took away her first period prep and re-assigned Plaintiff to hall duty to walk the floors, even though this was not the best use of teacher resources

18. There was no legitimate reason to take away Plaintiff's first period prep. First period prep time is significant and teachers view this as a favorable schedule as opposed to hall or cafeteria duty.

19. In nearly 20 years with the district, Plaintiff had never had a prep period taken away. However, Ms. Fanek's first period prep was not taken away and she was (and still is) exempted from hall duty and other coverages. To this day, Plaintiff's official assignment shows that her prep was changed to AA.

20. Another act of retaliation was Mr. Shaggura and Mr. Morales removed Plaintiff from covering the main desk to covering the cafeteria. Contrary to what Mr. Shaggura wrote,

4

Mr. Dolce's schedule was changed from hall duty to main-desk duty the same time Plaintiff was removed from the main desk (see schedule, evidence). Plaintiff was the only teacher removed from the main desk and Plaintiff observed Mr. Dolce, Mr. Texler, and Mr. Mateo covering the main desk continuously from the date she was removed to present. Cafeteria duty is considered a menial and undesirable task for a teacher. Also, teachers regard the main desk as a prestigious and favorable administrative assignment for the previously mentioned reasons and because the main desk staff are the face to the public.

21. Mr. Shagguara's November 10, 2020 letter further states, "Also, Mr. Grandoit will be reaching out to you…about your involvement with the senior class in lieu of your 7th period AA" (see 11/10/2020 email). Plaintiff was told to play the role of guidance counselor during the 3rd and 7th periods, as a result the change in her schedule. Requiring Plaintiff play the role of guidance counselor is another form of retaliation. No other teacher in the science department had their schedule changed immediately following a complaint concerning discrimination and retaliation.

22. These changes and added responsibilities, without training and support has increased the Plaintiff's stress and anxiety.

23. The fact that Ms. Fanek's favorable schedule and work conditions remain intact is clear evidence that Mr. Shaggura and Mr. Morales intended to send a chilling message to Plaintiff and others. No other teacher's prep period was removed, because with there being little to no students in the building, there was no need to do so.

5

24. In February of 2021, Plaintiff received a call from AP Ryan James. He asked Plaintiff if she sent a letter to the Board of Education about Mr. Shaggura. Plaintiff said no. He said Mr. Shaggura thinks you did something to him. (complaining about discrimination)

25. Around the time that Mr. James shared the above, Plaintiff noticed that Mr. Shaggura's behavior towards Plaintiff was getting increasingly hostile and disrespectful.

26. When Mr. James contacted Plaintiff, she was home caring for her sick son who contracted COVID. During this time, Mr. Shaggura sent her a few emails telling Plaintiff when she was due back to work. Plaintiff advised Shaggura that New Jersey has a 14-day quarantine requirement. However, Mr. Shaggura stated that New York has a 10-day requirement and she should return by the specified date (See 2/2/21 email). Ms. Potter and Ms. Paci (Caucasian teachers) both took extended COVID-related time-off. However, they received more favorable treatment. Mr. Shaggura's handling of her COVID-sick leave was retaliatory and racially-motivated.

27. For example, Mr. Shaggura targeted Plaintiff in an email about the COVID attestation form despite the fact that there was no Internet access (see 11.2.2020 email).

28. Ms. Fanek, on the other hand, receives resources, support, training, opportunities, and other favorable working conditions to ensure her success: a promethean board and a camera facing her white board that set her up to succeed and be at an advantage over others. Plaintiff asked for similar resources and support that Ms. Fanek received, but received none.

29. Even the Black aids are treated poorly. For example, the aids were recently placed in the old book room to do filing. The old book room has no windows, no ventilation, chipping

6

paint from the ceiling, and poor lighting. The other non-black aids are treated more favorably. For example, Susan K. was never assigned to work in the old book room. Nearly all the black aids were removed from the classrooms to file documents in an unsafe space.

30. In June of 2019, Mr. Shaggura referred to Ms. Wong (a former librarian) as a "fucking bitch" because she had a disagreement with Ms. Hutter. I was sitting in the secretary's office when Mr. Shaggura made the comment. He turned to me and said, "I don't care if you go back and tell her."

31. In September 2021, Plaintiff arrived at work and did not have requested technology. Plaintiff had ENL students in her class without any help from a push in teacher.

32. In September 2021, the principal would walk by Plaintiff without speaking even when she would greet him.

33. Ms. Fhakoury would schedule observations with Plaintiff and would not show up. She would cancel often and then show up on a day that we didn't agree to unannounced.

34. Plaintiff was excluded from the meetings with the developers and the recognition tracks that came to the building, yet her name was mentioned that she should have been there.

35. When Plaintiff learned about the NEARPOD meeting, Ms. Fahkoury invited a white teacher Ms Mercurio instead of Plaintiff.

36. Plaintiff requested a walkie talkie multiple times to assist her with her duties if clearing the halls and was refused. Ms Arefig (non-African-American) was provided a walkie during her duty and said that Mr. Shaggura gave her his personal walkie to come clear the halls. When Ms. Arefig told Mr Shaggura that Plaintiff wanted a walkie, he angrily responded

7

that she is always complaining. Plaintiff was subsequently mobbed by students trying to break up a fight and there was no walkie for her to call for help.

37. Plaintiff was not offered training or any opportunities while her non-African counterpart with less seniority than Plaintiff was given training, a lighter schedule and opportunities with the perks of overtime.

38. Plaintiff continues to be assigned the most challenging students.

39. Plaintiff sat with Mr. Morales in September of 2022 regarding having the ENL students. But without any assistance.

40. Plaintiff is being deliberated isolated from her peers.

41. Plaintiff does not receive public recognition for her accomplishments.

42. Plaintiff requested a functioning laptop in February 2023. Her request was debited yet Ms. Fanek received a new laptop cart in December 2022, even though she has been teaching three periods while Plaintiff is teaching five periods.

43. Being a senior teacher prior to Plaintiff's complaint, she taught four periods but her schedule was changed to five periods for the 2022-2023 school year and Ms. Fanek was given three teaching periods.

44. Ms. Fanek was allowed to have her ENL teacher teach her class while Plaintiff was denied a push in teacher. This continued throughout this school year.

45. Plaintiff was given an excessive amount of coverages in the 2022-2023 school year.

46. Plaintiff did not receive support regarding academically troubled and at-risk students.

8

47. An Arabic student named Amjad called Plaintiff a nigger and slave along with other students in the class that she was covering. Amjad threatened Plaintiff and told her that she better watch herself.

48. No action was taken against Amjad and she requested to no longer cover a class with him in it and they still put him in the classroom with Plaintiff to cover.

49. Amjad attacked African American students at Gorton. Plaintiff met with Mr. Morales regarding this, however, nothing was done.

50. Students wrote threatening things to Plaintiff in June of 2022. Plaintiff requested that the students not attend graduation but the request was denied.

51. As a result of the foregoing intentional continuing discrimination and retaliation, the Department of Education of the City of New York, and the Board of Education of the City School District of the City of New York violated Title VII of the Civil Rights Act of 1964 as amended by discriminating against Plaintiff due to her race (African-American), and retaliation.

52. Plaintiff has been subjected to an ongoing, continuous, intentional pattern race discrimination and retaliation that has created a hostile work environment and disparate treatment.

53. The above conduct is intentional willful, deliberate and continuous conduct that is a pattern of race discrimination and retaliation.

54. At all times relevant, Plaintiff performed her job responsibilities in an exemplary manner.

55. It has been necessary for Plaintiff to engage the services of an attorney to file and prosecute this action, and thus also request attorneys' fees.

## AS AND FOR THE FIRST CAUSE OF ACTION-TITLE VII

56. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as it more fully set forth herein.

57. Based upon the foregoing, the Defendant is seeking Plaintiff's termination and she otherwise has been subjected to a hostile work environment, disparate treatment and otherwise discriminated against based on her race, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et. seq. Defendant acted maliciously, wantonly, and in conscious disregard of Plaintiff's rights and Defendant's statutory obligations and as a result, plaintiff has been damaged.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a trial by jury of all issues and claims in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1. Compensatory damages including but not limited to back pay, and emotional distress;

2. Damages to Plaintiff's reputation;

3. Other damages including restoration of lost benefits;

4. A reasonable attorney fees plus the costs and disbursements of this lawsuit;

5. Such other and further relief as the Court deems just and proper.

Dated: New York, New York
      June 15, 2023

Respectfully Submitted,

STEWART LEE KARLIN
LAW GROUP, PC

<u>s/Stewart Lee Karlin</u>
STEWART LEE KARLIN, ESQ.
Attorney for Plaintiff
111 John Street, 22nd Floor
New York, NY 10038
(212) 792-9670

## **VERIFICATION**

STATE OF NEW YORK    )

COUNTY OF NEW YORK)    ss.:

I, the undersigned, an attorney admitted to practice in law in the Courts of New York State, state that I am the attorney of record for the Plaintiff in the within action; I have read the foregoing, Complaint, and know the contents thereof; the same is true to my own knowledge except as to those matters therein alleged to be on information and belief, as to those matters I believe to be true.

The reason this verification is made by your affirmant and not by the Plaintiff herein is that said Plaintiff resides in a county other than the county where your affirmant maintains his law office.

The grounds of your affirmant's belief as to all matter not stated upon my own knowledge are as follows:

Conversations with the Plaintiff and information contained in the file.

Dated:  New York, New York
             June 15, 2023

                  Stewart Lee Karlin
                STEWART LEE KARLIN, ESQ.

12

## ATTORNEY CERTIFICATION

Pursuant to 22 NYCRR, Section 130-1.1.A the undersigned, an attorney duly admitted to practice law in the Courts of the State of New York, respectfully affirms the truth of the following statement under the penalties of perjury pursuant to the C.P.L.R.:

The undersigned attorney hereby certifies that to the best of his knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of the papers (s) or the contents therein are not frivolous as defined in Subsection C of Section 130-1.1.

Dated: New York, New York
       June 15, 2023

                                                      Stewart Lee Karlin
                                                     STEWART LEE KARLIN, ESQ.

13