UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

PAULETTE BYAS,

**7:23-cv-08437-KMK**

**Plaintiff,**          **AMENDED**
                                              **COMPLAINT**
   -against-                             **AND JURY DEMAND**


YONKERS PUBLIC SCHOOLS

                 Defendants,
------------------------------------------------------------------X

## PRELIMINARY STATEMENT

        Plaintiff, PAULETTE BYAS, by her attorney, STEWART LEE KARLIN, ESQ., for her

complaint herein alleges as follows:

1.       This is an action pursuant to the Title VII where Plaintiff alleges discrimination, retaliation

      and hostile work environment against her based on her race (African-American) by

      Defendant. This action seeks compensatory damages, including emotional distress,

      damages to Plaintiff's reputation; other damages; reasonable attorney fees plus the costs

      and disbursements of this lawsuit, and such other and further relief as the Court deems just

      and proper.

2.       At all times hereinafter mentioned, Plaintiff Paulette Byas (hereinafter mentioned "Plaintiff

      or Ms. Byas"), resides in the State of New Jersey. Plaintiff is an employee as defined by

      Title VII of the Civil Rights Act of 1964 42 U.S.C. 2000e et. seq. as amended.

3.      Defendant Yonkers Public Schools (hereinafter referred to as the "District") is a school district under the laws of the State of New York, which is in charge of all public schools in the City of Yonkers. At all relevant times, Defendant is an "employer" as defined in Section 701(b) of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e(b) As such, Defendant is subject to the requirements of Title VII (42 U.S.C. § 2000e et seq.).

4.      Jurisdiction is invoked pursuant to Title VII 42 U.S.C. 2000e et. seq, Plaintiff filed EEOC charges based on race discrimination and retaliation and a notice of right to sue letter was received within ninety days of the filing of this lawsuit conferring concurrent jurisdiction upon this Court.  The Right to sue letter dated March 16, 2023, and was received by Plaintiff via received USPS mail on March 21,2023. (See Exhibit "A" a true copy of the notice of right to sue letter)

5.      Plaintiff is employed as a teacher in the Yonkers Public Schools.

6.      At all times relevant in her career as a teacher, Plaintiff performed her responsibilities in an exemplary manner

7.      Plaintiff was subjected to [1]disparate treatment, discrimination and a hostile work environment due to her race (African-American) and retaliation for the reasons set forth below.

8.      Principal Shaggura's adverse treatment of African-American teachers and staff at Gorton High School has created an environment where African-American teachers are not given

---

[1] The following teachers worked in the same school, had the same job title (teacher), same supervisors and were had the same job duties except as set forth in this complaint, and were not African American and were treated more favorable than Plaintiff as explained throughout the complaint, despite Plaintiff's seniority: Ms. Fanek, Ms. Ahn, Mr. Dolce, Mr. Texler, Ms. Potter, Ms. Paci, Katherine Marinello, Jennifer Dematteo, Ms. Mercurio, Ms. Arefig, Dawn Meyers, Ms. Rabatti.

similar resources, training, and opportunities as other teachers and when concerns are raised and brought to his attention, prompt retaliation follows.

9.  In approximately June 2019, Principal Shaggura (Jordanian) asked Plaintiff whether she wanted the Science Department Chair position. He stated, "Anyone but Mr. Haughton." Plaintiff immediately told Mr. Shaggura "No." Plaintiff knew that he wanted to remove Mr. Haughton, another African-American teacher from the position without just cause. Mr. Haughton has a long history of highly effective ratings and was doing an excellent job leading the Science Department. Also, Mr. Haughton has been with the district close to 20 years, and he has appropriate training and experience including certification in building leadership.

10. Mr. Shaggura had wrongly accused Mr. Haughton of dismissing students before the bell, a claim disproved by video recording and Mr. Shaggura was not making similar attempts to replace the Math Department Chair (a white female teacher), even though the Math scores were lower than Science. Plaintiff saw no justifiable reason for Mr. Shaggura seeking to remove Mr. Haughton and she felt that, if she took the Chair position, Mr. Shaggura would treat and regard her as he was doing Mr. Haughton.

11. Mr. Shaggura's decision to have "anyone but" Mr. Haughton as the Science Department Chair is partly the reason that he provides only Ms. Fanek with resources, opportunities, and trainings that other science teachers, including Plaintiff has not received. Ms. Fanek is the only teacher in the Science Department with a promethean board, camera covering her board, and other resources and training. Ms. Fanek was a non-tenured teacher at the time.

12. On or around November 1, 2020, Plaintiff submitted to HR and Superintendent Edwin Quezada (Hispanic) a detailed complaint that Mr. Wilson and Plaintiff wrote. This complaint used the words "discrimination" and "retaliation." Superintendent Quezada forwarded this complaint to Principal Shaggura and Shaggura retaliated against Mr. Wilson and Plaintiff by changing their schedules on the same day and by increasing their workload.

13. Mr. Shaggura and other administrators escalated their retaliation on a constant and continuing basis.

14. Mr. Shaggura and Mr. Morales believed that Mr. Wilson and Plaintiff wrote the on-around November 1st, 2020 complaint–as evidenced in the following: AP Ryan James contacted Plaintiff, as per Mr. Shaggura's instruction, to identify who were involved in writing the on-around November 1, 2020 complaint that was sent to the Board. The on-around November 1st, 2020 complaint so angered Mr. Shaggura and Mr. Morales that they took extreme measures to punish both Mr. Wilson and Plaintiff on the same day and in the same fashion in a showing of direct retaliation.

15. For instance, Mr. Wilson and Plaintiff were the only teachers who received adverse schedule changes on about one business day after both were confronted by Mr. Shaggura and Mr. Morales on or about November 6, 2020, respectively about their protected activity complaints.

16. Furthermore, on or about November 1, 2020, Plaintiff complained specifically about discrimination and titled her complaint "Discrimination". Specifically, Plaintiff complained that Ms. Fanek (a Jordanian teacher) was being treated more favorably than Plaintiff, and more favorably than other African American teachers.

17.  On or about November 5, 2020 Plaintiff emailed a complaint and provided more information on how Mr. Shaggura and Mr. Morales were discriminating against African American Teachers such as Plaintiff and Mr. Houghton by treating them less favorably than the non-African American teachers such as Ms. Ahn (Asian) and Ms. Fanek (Jordanian).

18.  On the same complaint, Plaintiff further expressed her concerns because she saw that Mr. Shaggura was using Ms. Fanek to undermine and marginalize Mr. Haughton. Plaintiff saw how this was affecting the cohesiveness and team spirit of the Science Department and how these actions could jeopardize student's success.

19.  After Mr. Shaggura read Plaintiff's November 5, 2020 email, witnesses observed him darting out of his office and declaring, "Who the fuck Ms. Byas thinks she is. I will make Fanek the department rep today if I want!"

20.  Mr. Shaggura retaliated against Plaintiff after he received her November 5, 2020 email. Although the email was addressed to him and Mr. Morales, to date, he has not responded, or discussed, the substance of the email. Instead, he continued to treat Ms. Fanek in a more favorably manner than he did Plaintiff.

21.  By November 06, 2020, it was clear that Principal Shagurra and AP Morales knew Plaintiff was complaining of discrimination.

22.  On or about Friday November 6th, 2020 Mr. Morales came to the room to discuss Plaintiff's email. Plaintiff expressed that specific conduct was discriminatory, and retaliatory, and that she feared retaliation in the form of schedule change, etc. Mr. Morales stated that the leaders at Gorton had the authority to make the moves they made and will

5

continue to make moves with Ms. Fanek. The nature, aspect, content, and circumstances of Mr. Morales' presentation to Plaintiff was retaliatory, because no attempt was made to address the concerns outlined in her November 5th, 2020 email.

23. At the meeting, Plaintiff also complained of hostile work environment and explained the favoritism toward Ms. Fanek (Jordanian). Mr. Morales' body language toward Plaintiff was angry. Immediately after the meeting, Mr. Shaggura and Mr. Morales retaliated against Plaintiff by changing her schedule and assigning her unpaid guidance-related duties.

24. Plaintiff's November 2020 complaints (November 01, 05 and 06) so angered the administration at Gorton to such an extent that Assistant Principal James made efforts to get Plaintiff to transfer from Gorton High School.

25. On or about November 10, 2020, Mr. Shaggura took further retaliatory (adverse) actions as follows:

26. At the start of the school year, Plaintiff's schedule included prep time during first period. This first prep period afforded her the opportunity to prepare to teach two subjects (Living Environment and Forensics). Mr. Shaggura and Mr. Morales took away her first period prep and re-assigned Plaintiff to hall duty to walk the floors, even though this was not the best use of teacher resources.

27. There was no legitimate reason to take away Plaintiff's first period prep. First period prep time is significant, and teachers view this as a favorable schedule as opposed to hall or cafeteria duty.

28.    In nearly 20 years with the district, Plaintiff had never had a prep period taken away. However, Ms. Fanek's first period prep was not taken away and she was (and still is) exempted from hall duty and other coverages. To this day, Plaintiff's official assignment shows that her prep was changed to AA.

29.    Another act of retaliation was that Mr. Shaggura and Mr. Morales removed Plaintiff from covering the main desk to covering the cafeteria. Contrary to what Mr. Shaggura wrote, Mr. Dolce's schedule was changed from hall duty to main-desk duty the same time Plaintiff was removed from the main desk (see schedule, evidence).  Plaintiff was the only teacher removed from the main desk and Plaintiff observed Mr. Dolce, Mr. Texler, and Mr. Mateo covering the main desk continuously from the date she was removed to present.  Cafeteria duty is considered a menial and undesirable task for a teacher. Also, teachers regard the main desk as a prestigious and favorable administrative assignment for the previously mentioned reasons and because the main desk staff are the face to the public.

30.    Mr. Shagguara's November 10, 2020 letter further stated, "Also, Mr. Grandoit will be reaching out to you…about your involvement with the senior class in lieu of your 7th period AA" (see 11/10/2020 email). Plaintiff was told to play the role of guidance counselor during the 3rd and 7th periods, as a result of the change in her schedule. Requiring Plaintiff play the role of guidance counselor is another form of retaliation.

31.    No other teacher in the science department had their schedule changed immediately following a complaint concerning discrimination and retaliation.

32.    These changes and added responsibilities, without training and support has increased the Plaintiff's stress and anxiety.

33. The fact that Ms. Fanek's favorable schedule and work conditions remained intact is clear evidence that Mr. Shaggura and Mr. Morales intended to send a chilling message to Plaintiff and others. No other teacher's prep period was removed and because with there being little to no students in the building, there was no need to do so.

34. The discrimination, retaliation and hostile work environment was continuous and ongoing.

35. In February of 2021, Plaintiff received a call from AP Ryan James. He asked Plaintiff if she sent a letter to the Board of Education about Mr. Shaggura. Plaintiff said no. He said Mr. Shaggura thinks you did something to him (complaining about discrimination)

36. Around the time that Mr. James shared the above, Plaintiff noticed that Mr. Shaggura's behavior towards Plaintiff was getting increasingly hostile and disrespectful.

37. When Mr. James contacted Plaintiff, she was home caring for her sick son who contracted COVID. During this time, Mr. Shaggura sent her a few emails telling Plaintiff when she was due back to work. Plaintiff advised Shaggura that New Jersey has a 14-day quarantine requirement. However, Mr. Shaggura stated that New York has a 10-day requirement, and she should return by the specified date (See 2/2/21 email).

38. However, Ms. Potter and Ms. Paci (Caucasian teachers) took extended COVID-related time-off. They received more favorable treatment than Plaintiff as they all received more COVID time than Plaintiff and they were not rushed to come back by the Principal as Plaintiff was. Mr. Shaggura's handling of Plaintiff's COVID-sick leave was retaliatory and racially motivated.

39. Ms. Potter, Ms. Paci, Mr. Dolce and Mr. Texler are similarly situated Caucasian teachers in all material respects that were treated better than Plaintiff on an ongoing basis.

40. For example, Mr. Shaggura targeted Plaintiff in an email about the COVID attestation form despite the fact that there was no Internet access (11.2.2020 email).

41. On the other hand, Ms. Fanek (Jordanian) similarly situated Caucasian teacher in all material respects receives resources, support, training, opportunities, and other favorable working conditions to ensure her success such as having a promethean board and a camera facing her white board that set her up to succeed and be at an advantage over others. Plaintiff asked for similar resources and support that Ms. Fanek received, but she received none. Ms. Fanek received preferential treatment and is treated favorably in comparison to Plaintiff. This is despite Plaintiff having more seniority and they are in the same position.

42. At Gorton High School, African American aides are also treated poorly. For example, the African American aids were recently placed in the old book room to do filing. The old book room has no windows, no ventilation, chipping paint from the ceiling, and poor lighting. By contrast, the other non-African American aids are treated more favorably. For example, Susan K., a Caucasian aid, was not assigned to work in the old book room. Nearly all the African American aids were removed from the classrooms to file documents in an unsafe space.

43. Between 2020 and 2022, before Sony Grandoit and Ryan James left Gorton, Plaintiff complained to them constantly about discrimination, retaliation, and hostile environment since it was ongoing.

44. Before Sony Grandoit (African American) left Gorton High School, he shared with Plaintiff his own experience of discrimination at Gorton. He explained how he was excluded from administration meetings due to his race. He also spoke with Plaintiff at

length about favoritism and disparate treatment toward non-African American teachers. Plaintiff constantly complained to Grandoit and James with the hope and expectation that they would help her. Mr. Grandoit and Plaintiff would discuss this in his office in 2021 often. Plaintiff was placed to work in guidance for two periods a day after her schedule was changed. Mr. Grandoit worked with the seniors that year. Ms. Surace who was the 12th grade guidance counselor also spoke about how Plaintiff was treated disparately and how Plaintiff was sent to work in guidance.

45.    Ms. Surace was interviewed about Plaintiff working in the guidance office in June 2022.

46.    Plaintiff spoke with Mr. Gradoit outside of work verbally over the phone while driving home from work in 2021 and in the beginning of 2022 about the discriminatory and disparate treatment that Plaintiff was receiving at Gorton. Plaintiff also spoke openly about the hostile work environment, the retaliation, and the constant discriminatory practices.

47.    When Principal Shaggura changed Plaintiff's schedule after she sent the complaint in November 2020 Plaintiff spoke with Mr. Grandoit and said it was discriminatory and retaliation. Mr. Grandoit agreed and stated that he was experiencing the same thing. Ms. Tracy Thiam who is an African American administrator also talked to Plaintiff about experiencing racial discrimination. She stated to Plaintiff that she was not invited to meetings as well when she worked under Mr. Shaggura.

48.    After Plaintiff filed her two complaints in October and November of 2020 Mr. Ryan James tried to get her to transfer out of Gorton High School in direct retaliation for her complaining about discrimination.

49. Plaintiff was subjected to discrimination due to her race, and retaliation and treated disparately compared to similarly situated in all material respects other non-African American teachers and isolated by the administration and in meetings where non-African American teachers attended.

50. After the November complaints, Plaintiff was also subjected to intimidation. After the initial complaints, Mr. Shaggura made comments in front of the entire office staff saying, "who the fuck does Ms. Bays things she is." This statement was entered into evidence by someone that was present in the office at the time. The statement was written by Ms. Shevon Osholaja. This created a chilling effect on Plaintiff.

51. In addition, when Principal Shaggura changed Plaintiff's schedule after she sent the complaint in November 2020, Plaintiff spoke with Mr. Grandoit about this and said it was discriminatory and retaliation.

52. The disparate and retaliatory treatment towards Plaintiff continued on an ongoing basis.

53. Despite the intimidation Plaintiff continuously suffered, Plaintiff took the courageous step of filing a complaint on or about June of 2021. Plaintiff filed an HR complaint (Robert Voorheis) on or about June 8, 2021 about discrimination, hostile work environment and retaliation at Gorton. This complaint angered Principal Shaggura.

54. A few days later, after the complaint, a teacher Katherine Marinello (Caucasian) made a false accusation against Plaintiff. Mr. Shaggura interviewed her and other witnesses that he found walking through the lobby on camera, and no one was able to corroborate said incident. Despite this, on or about June 14, 2021, Principal Shaggura conducted a retaliatory frivolous investigation (done 6 days after the complaint) and tried to get safety

officer Bass to write a statement about Plaintiff in favor of Katherine Marinello, but safety officer Bass refused and upon told Mr. Shaggura that the alleged incident never happened and thus there was nothing for him write up. This was done in order to intimidate and punish Plaintiff for having complained.

55. Principal Shaggura used the same retaliatory strategy on Mr. Wilson (African American Teacher) within a few days after he filed an external discrimination complaint against Mr. Shaggura. On June 7, 2021, Mr. Wilson was also called into a frivolous, retaliatory investigation conducted by Mr. Shaggura.

56. On or about June of 2021, Plaintiff filed another complaint after Marinello made false allegations against her and after Principal Shaggura conducted a retaliatory investigation. Plaintiff followed up with a detailed HR complaint which HR rebutted.

57. During the 2021-2022 school year, Plaintiff continued to be treated differently than other similarly situated in all material respect teachers that were not African American.

58. On the 2021-2022 school year, Jennifer Dematteo (Caucasian, English dept rep) slammed her door multiple times whenever Plaintiff had hall duty and walked by her classroom. Plaintiff had safety officer Adams witness this on many occasions.

59. Union rep Kenneth Texler (Caucasian) called Plaintiff names such as "toxic" after Plaintiff filed her complaint. This was witnessed by Plaintiff's colleague.

60. On the 2021-2022 school year, Tracy Thiam (African American) was an Assistant Principal at Gorton. She stated to Plaintiff that she did not like Plaintiff's evaluations and advised Plaintiff to challenge them because they were not indicative of the work that Plaintiff was doing.

61. When Plaintiff met with Mr. Morales regarding this, he was not willing to listen nor change anything.

62. Tracy Thiam was a senior administrator while Jaime Morales was not tenured at that time.

63. Ms. Fanek (Jordanian teacher) received favorable evaluations from Mr. Morales (Hispanic) at the time he was an AP even though she took extended maternity leave time. Ms. Fanek still received highly effective on her evaluations and was treated preferentially.

64. On the same school year, Plaintiff also made school improvement suggestions to Mr. Morales in order to receive similar treatment as Ms. Fanek but Plaintiff was not given the opportunity.

65. For example, Ms. Fanek was given three periods to teach for the past five schools years. She was also given overtime opportunities to where she made in excess of $30,000 of overtime. Ms. Fanek was also given overtime opportunities while she was on maternity leave which is against the rules. By contrast, Plaintiff was denied all of these opportunities.

66. Furthermore, throughout the year 2021-22, Plaintiff was routinely excluded from school initiatives. For example, Plaintiff was excluded from the veteran's commemoration program at the school. All the African American teachers were excluded. The participants were of middle eastern decent. Plaintiff has family members that are veterans but Plaintiff was excluded as a part of the routinely exclusions.

67. After Plaintiff jointly filed a complaint with another colleague Mr. Wilson the exclusionary practice escalated.

68. Plaintiff's counterpart Ms. Fanek receives training to help advance her career and salary while Plaintiff is excluded. Plaintiff requested the same training but was denied.

69. Plaintiff is yet to receive any opportunities nor are any opportunities offered to her. Plaintiff only learned about things when she looks at Twitter to see her non-African American counterparts photographed and getting praised.

70. Plaintiff also made anonymous complaints but was fearful of retaliation. The principal's secretary made mention about it to her, eluding to the fact that it was Plaintiff.

71. In September 2021, Plaintiff arrived at work and did not have requested technology. Plaintiff had ENL students in her class without any help from a push in teacher.

72. In September 2021, the principal would walk by Plaintiff without speaking to her even when she would greet him.

73. Mr. Fhakoury would schedule observations with Plaintiff and would not show up. She would cancel often and then show up on a day that they did not agreed to unannounced.

74. Plaintiff continued to be excluded from the meetings with the developers and the recognition tracks that came to the building, yet her name was mentioned that she should have been there.

75. For example, when Plaintiff learned about the NEARPOD meeting, Ms. Fahkoury invited a Causasian teacher Ms. Mercurio instead of Plaintiff.

76. Plaintiff requested a walkie talkie multiple times to assist her with her duties if clearing the halls and was refused. Ms. Arefig (non-African-American) was provided a walkie during her duty and said that Mr. Shaggura gave her his personal walkie to come clear the halls. When Ms. Arefig told Mr. Shaggura that Plaintiff wanted a walkie, he angrily responded that she is always complaining. Plaintiff was subsequently mobbed by students trying to break up a fight and there was no walkie for her to call for help.

77. Plaintiff was not offered training or any opportunities despite requesting them, by contrast her non-African teachers with less seniority than Plaintiff who was given training, a lighter schedule and opportunities with the perks of overtime.

78. Plaintiff continued to be assigned the most challenging students.

79. In June 2022, Students wrote threatening things to Plaintiff. Plaintiff requested that the students not attend graduation, but the request was denied.

80. Plaintiff endured a more intensified discrimination, hostile environment, and retaliation after she filed her two complaints both Mr. Wilson and Plaintiff became the recipients of ongoing ostracism and retaliation.

81. The Principal also humiliated Plaintiff by sharing her complaint with her colleagues. The Principal's secretary told Plaintiff on July 4, 2022 that she received the complaint via email and read it. The information was used to ostracize Plaintiff and bully her.

82. Furthermore, teachers were told to stay away from Plaintiff because she was "toxic" and were told to avoid her.

83. In fear of retaliation Plaintiff's fellow teachers avoided her. When Plaintiff attempted to speak with other teachers they would say to her "please don't repeat what I'm saying to you because we don't want any problems with administration."

84. Plaintiff continued to be assigned the most difficult and challenging students in her classes.

85. When Plaintiff complained about this to the guidance counselor, she was told to not say anything to administration or she will get the same treatment as Mr. Wilson.

86. In addition, during the whole year, Plaintiff was excluded from having a push-in teacher which she had in all of her previous years when she taught the ELL students.

87.    The push-in teacher was only allowed to help Ms. Fanuk's classes, thus reducing her teaching periods from five to three.   This is ongoing.

88.    Plaintiff was not provided with support when dealing with difficult students. Plaintiff was threatened by a student and the student was told by Ms. Fakhoury "to come see her if she had any problems with Plaintiff."

89.    In addition, L, a former student threatened Plaintiff and subsequently assaulted Plaintiff. Plaintiff is currently in physical therapy for the injuries sustained.

90.    On or about September 2022, Plaintiff complained to Mr. Morales regarding having the ENL students without any assistance.  Nothing was done.

91.    In addition, on or about September 2022, while doing a coverage for a math class in room 2, student A (Jordanian and upon information and belief Mr. Shaggari's nephew) called Plaintiff and other black students "niggers" and "slaves".

92.    Plaintiff was deeply shocked and called safety to the room. Officer McIver.  She also witnessed the student calling Plaintiff and the other students these names.

93.    No action was taken against student A.  Plaintiff requested to no longer cover a class with him in the class but he was still put him in Plaintiff's classroom.

94.    The same student A and his friends who happen to be of middle eastern descent attacked an African American student.  Plaintiff went to break up the fight and student A went to yell in Plaintiff's face and told her "get the fuck out of here!". Plaintiff met with Mr. Morales regarding this, however, nothing was done.

95.    Further, as another example of disparate treatment Ms. Fanek and Ms. Ahn (Non African-American and upon information and belief both Middle eastern/Jordanian) were placed in

the ptech program which was Plaintiff's position. Once the previous principal was removed from the building Mr. Shagggura immediately took ptech away from Plaintiff and placed similarly situated non-African American teachers into the position. Both of these middle eastern teachers were allowed to make an excess of over $30,000 per school year because of this.

96. In the 2022-2023 school year, the disparate treatment in the form of discrimination, retaliation and hostile work environment continued.

97. Plaintiff was given an excessive number of coverages in the 2022-2023 school year.

98. Moreover, Plaintiff did not receive public recognition for her accomplishments.

99. Plaintiff requested a functioning laptop in February 2023. Her request was debited yet Ms. Fanek received a new laptop cart in December 2022, even though she has been teaching three periods while Plaintiff is teaching five periods.

100. Being a senior teacher prior to Plaintiff's complaint, she taught four periods but her schedule was changed to five periods for the 2022-2023 school year and Ms. Fanek was given three teaching periods.

101. Ms. Fanek was again allowed to have her ENL teacher teach her class while Plaintiff was denied a push in teacher. This continued throughout this school year.

102. Plaintiff again did not receive support regarding academically troubled and at-risk students.

103. On or about June 2023, Ms. Fanek was able to remove her regents' tests to Mr. Shaggura's school to grade her exams. She scored over 90% rate and was praised. A clear advantage because Plaintiff's exams were scored in house under careful and proper standards. Ms.

Fanek scored over 90% passing rate, the highest the school has ever seen. Whereas Plaintiff received her lowest regents scores in her entire teaching career.

104. Plaintiff was not trained on how to use the promethean board. It was dropped off in her classroom. Whereas other teachers received training on how to use it.

105. Furthermore, non-African American teachers are allowed to leave school before time on a regular basis; by contrast, Plaintiff is micromanaged. For example, one occasion Plaintiff went to take something out of her car she was reprimanded by Mr. James.

106. Plaintiff was also accused of having students use their cellphones in class, this was totally false. On the contrary, Plaintiff was the only teacher in the building that collected phones daily in all of her classes.

107. Dawn Meyers (Caucasian teacher) is allowed to teach credit recovery virtually whereas all other teachers must teach it in the school building. She is teaching geometry to seniors. It is to also be noted that she does not hold a math license. Plaintiff spoke with Shelli Foster, an African American licensed math teacher at Gorton, and asked her if she was aware of what was offered to Meyers. She said no and expressed interest in said position. Dawn Meyers was also allowed to get her live-in girlfriend a position as a teaching assistant at Gorton high school in 2022 and then she became a full-time teacher at Gorton in the 2023 school year. Both of these teachers are Caucasian. The position was not posted and was created for her. These practices continued under Mr. Morales that began with Mr. Shaggura. African American teachers who teach math were not offered this kind of opportunity.

108. Additionally, Plaintiff was not offered to teach Living Environment virtually. Therefore, she cannot do credit recovery after school because she must get home to her minor child. This work from home position was not published publicly to the entire staff.

109. Plaintiff does not find out about these positions unless she sees them on twitter or after the positions are all filled. Plaintiff explained to Mr. Morales in August 2022 that in past practice all job opportunities are posted on the door in the mail room. He refused to take her suggestion and thus Plaintiff is left out getting overtime.

110. Plaintiff is constantly being marginalized even when she volunteers her time. She is not able to learn, grow and advance in her career. For example, she volunteered to help a teacher so that she qualified for regents and when the time even her volunteer work was denied.

111. Plaintiff continues to be excluded from the Ptech program where the non-African American teacher has had it for seven years now. There's no room for her to make any extra pay unlike the non-African American teachers.

112. On or about September 2023, Plaintiff went to the school counselor's office to speak about having discriminatory class assignments and student rosters. She was told that the students must remain with her and that she should not complain before she gets treated like Mr. Wilson, another colleague who filed a complaint about discrimination in the building. This comment from the school counselor made Plaintiff fearful about speaking up regarding the inequities and discriminatory practices.

113. In retaliation for her discrimination complaints, Plaintiff is marginalized and her suggestions concerning safety and school improvement are routinely ignored. Plaintiff

suggested that school administrators should provide proper safety coverage on the second floor and a walkie to call for help. This was ignored. Consequently, Plaintiff was assaulted and injured by a teacher and a student in June 2023.

114.    In September 2023, Plaintiff suggested that they use her to cover the restrooms on the ground floor to deter fights and drug use. She was ignored and removed from the ground floor restroom by assistant principal Cassano in a hostile manner. Consequently, there was a major fight with approximately 10-15 girls in the restroom the following day. Plaintiff was asked to go in to diffuse the problem instead of listening to her suggestion of having her take proactive actions to prevent fights.

115.    Gorton High School is permeated with discriminatory and retaliatory practices against African American teachers, especially those who complain about work conditions.

116.     On October 5, 2023, Plaintiff complained to Mr. Morales about discriminatory and retaliatory practices and pointed out her observation of discrimination against Ms. Knowles, Gorton's librarian. In Plaintiff's nineteen years in the building, she has never seen a librarian treated this way. Plaintiff states that she has never seen a librarian cover classes like Ms. Knowles. Plaintiff stated that she has never seen a librarian proctor regents exams like Ms. Knowles. They have never done this to the non-African American librarians like Ms. Wong or Mr. Riley. Ms. Knowles complained to Plaintiff stating that she was forced to work late without compensation to proctor the regents exams.

117.    The environment is permeated with racial antipathy to African American employees.

118.    The administrative team at Gorton High School continue to deny Plaintiff support concerning challenging and threatening students.

119. On October 3, 2023, one of Plaintiff's students threatened to "slap the shit out of her." In response, the non-African American Administrative team led by Ms. Fakhoury got together with the student to gather evidence against Plaintiff, and assistant principal Fakhoury coached the student by telling her that, "if she has any issues with Plaintiff, to come see her." Ms. Fahkoury also tried soliciting non-existing evidence from third parties.

120. The meeting was adversarial against Plaintiff in favor of the student and the only African American Administrator at Gorton High School (Ms. Mcclary) was excluded from the meeting. It is a pattern and practice to exclude African American administrators whenever disciplinary/adverse action is being planned and carried out against targeted African American educators.

121. Typically, students are suspended when they threaten teachers. However, this disciplinary/safety procedure was ignored in Plaintiff's case but adhered to when supporting non-African American teachers.

122. In an October 3rd email, Assistant Principal Baez minimized the student's threat issued against Plaintiff. Mr. Baez wrote that the student did not mean what she said. Mr. Baez informed Plaintiff that he was going to come sit in her room to watch the student. Mr. Baez also confronted Plaintiff in the hallway concerning the threatening student, and he engaged her in a hostile manner. The constant retaliation and discrimination that Plaintiff has faced is continuous.

123. Plaintiff met with AP Dr. Baez on October 5, 2023, regarding a student. He walked away from her and said "Ha!" Plaintiff was mortified stating that she has never been treated to

poorly in all her years in Gorton high school. She stated that "ever since she filed a formal complaint against Mr. Shaggura the attacks against me have been constant."

124.  Due to the obvious lack of support from the administrative team and their adversarial stance against Plaintiff, she was forced to seek help from the police department on October 5, 2023, out of fear for her safety because she was assaulted by a student and teacher June 2023.

125. On October 5th, Plaintiff complained to Mr. Morales (now Principal) about discriminatory class assignments/work assignment, lack of support, retaliation, and her observation of discrimination against Black librarian Brenda Knowles.

126. For this school year (2023-24), Principal Morales continues to show favoritism to non-African American teachers by providing them with fewer than four class periods; no administrative duties; as many as three consecutive periods off from teaching; eight period off so that they can leave work early.

127. Plaintiff began complaining about this disparity in treatment as early as 2020, because of the consequential hardships and disadvantages her students and her experienced. Yet, Principal Morales continues this practice that excludes Black teachers.

128.  Principal Morales and Ms. Fakhoury assigns to Plaintiff some of the most challenging students. She receives students who are recently released from jail; a disproportionate number of students with IEPs; and a disproportionate number of ENL students. Following her discrimination complaint, she also continues to receive a high frequency of coverage requiring her to cover classes for absent teachers or teachers removed from instructional duties to take on duties outside their classroom.

129.    Plaintiff was injured when she was assaulted by both a teacher and a student in June 2023. Despite these circumstances that warranted her receiving an accommodating schedule, no such consideration was given to her when Principal Morales assigned light schedules to mostly non-African American teachers year after year.

130.    In setting up Plaintiff's schedule, Mr. Morales and Ms. Fakhoury did not adhere to the past practice of not assigning to teachers a "hot-zone" area two consecutive years. For the 2022-23 school year, Plaintiff covered the library where there were large numbers of students and stressful incidents relating to student conflicts, fights, etc.  For this school year, Plaintiff was not assigned a lighter duty like her non-black colleagues. Instead, Mr. Morales and Ms. Fakhoury placed her in another area where there are large number of students (the cafeteria) and frequent fights and incidents.

131.    In her nineteen (19) years at Gorton, she noticed that administrators routinely place targeted teachers in high stress areas, such as the cafeteria, to punish and retaliate against them.

132.    As a result of the foregoing intentional continuing discrimination and retaliation, the Department of Education of the City of New York, and the Board of Education of the City School District of the City of New York violated Title VII of the Civil Rights Act of 1964 as amended by discriminating against Plaintiff due to her race (African-American), and retaliation.

133.    Plaintiff has been subjected to an ongoing, continuous, intentional pattern race discrimination and retaliation that has created a hostile work environment and disparate treatment.

134. The above conduct is intentional willful, deliberate, and continuous conduct that is a pattern of race discrimination and retaliation.

135. At all times relevant, Plaintiff performed her job responsibilities in an exemplary manner.

136. It has been necessary for Plaintiff to engage the services of an attorney to file and prosecute this action, and thus also request attorneys' fees.

## -AS AND FOR THE FIRST CAUSE OF ACTION-
## TITLE VII DISPARATE TREATMENT DUE TO RACE DISCRIMINATION

137. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as it more fully set forth herein.

138. Based upon the foregoing, the Defendant is seeking Plaintiff's termination and she otherwise has been subjected to a disparate treatment and otherwise discriminated against based on her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et. seq. Defendant acted maliciously, wantonly, and in conscious disregard of Plaintiff's rights and Defendant's statutory obligations and as a result, plaintiff has been damaged.

## -AS AND FOR THE SECOND CAUSE OF ACTION-
## HOSTILE WORK ENVIRONMENT

139. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as it more fully set forth herein.

140. Based upon the foregoing, the Defendant is seeking Plaintiff's termination, and she otherwise has been subjected to a hostile work environment and otherwise discriminated against based on her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et. seq. Defendant acted maliciously, wantonly, and in conscious disregard of

Plaintiff's rights and Defendant's statutory obligations and as a result, plaintiff has been damaged.

## -AS AND FOR THE SECOND CAUSE OF ACTION-
## RETALIATION

141.  Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as it more fully set forth herein

142.  Based upon the foregoing, the Defendant is seeking Plaintiff's termination, and she otherwise has been subjected to retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et. seq. Defendant acted maliciously, wantonly, and in conscious disregard of Plaintiff's rights and Defendant's statutory obligations and as a result, plaintiff

## <u>DEMAND FOR A JURY TRIAL</u>

143.  Plaintiff demands a trial by jury of all issues and claims in this action.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1.  Compensatory damages including but not limited to back pay, and emotional distress;

2.  Damages to Plaintiff's reputation;

3.  Other damages including restoration of lost benefits;

4.  A reasonable attorney fees plus the costs and disbursements of this lawsuit;

5.  Such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 08, 2023                    Respectfully Submitted,

STEWART LEE KARLIN
LAW GROUP, PC

s/*Natalia Kapitonova*
NATALIA KAPITONOVA, ESQ.
STEWART LEE KARLIN, ESQ.
Attorney for Plaintiff
111 John Street, 22nd Floor
New York, NY 10038
(212) 792-9670