**STEWART LEE KARLIN LAW GROUP, P.C.**
**111 John Street, 22nd Floor**
**New York, New York 10038**
**(212) 792-9670/Office**
**(212) 732-4443/Fax**
cnk@stewartkarlin.com

December 18, 2023

<u>Via ECF</u>
Honorable Kenneth M. Karas
United States Courthouse
300 Quarropas Street, Chambers 533
White Plains, New York 10601-4150

**Re: <u>Byas v. Yonkers Public Schools</u>, 7:23-cv-08437-KMK**

Dear Judge Karas:

This firm represents Plaintiff Ms. Paulette Byas (hereinafter "Plaintiff") in the above-referenced action. I write pursuant to Rule II (A) of Your Honor's *Individual Motion Practices and Rules* in response to Defendant's request for a pre-motion conference in anticipation of its motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).

This is an action pursuant to the Title VII where Plaintiff alleges discrimination, retaliation and hostile work environment based on her race (African American). In essence, a motion to dismiss will be futile because viewed in the light most favorable to Plaintiff, the amended complaint contains sufficient facts to set forth a prima facie case of discrimination, retaliation and hostile work environment. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), et al. *infra*.

    **A.**    **Scope of Review-Plausibility**

When considering a motion to dismiss under F.R.C.P. 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." <u>Faber v. Metro. Life Ins. Co.</u>, 648 F.3d 98, 104 (2d Cir. 2011). <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). <u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, 496 F.3d 229, 237 (2d Cir. 2007). Here, Plaintiff has pleaded plausible facts, that viewed in the light most favorable to her, make a plausible cause of action for discrimination, retaliation and hostile work environment based on her race.<u>Ellis v. Century 21 Dep't Stores</u>, 975 F. Supp.2d 244 (E.D.N.Y. 2013). Thus, the motion to dismiss should be denied.

    **B.**    **Plaintiff's action is timely and thus it cannot be dismissed on procedural grounds**

A person seeking to bring a Title VII claim must commence a civil action "not more than 90 days after receipt of a right-to-sue letter from the [Equal Employment Opportunity Commission ("EEOC")]." <u>Dawes v. City Univ. of N.Y</u>., 193 F. App'x 59, 60 (2d Cir. 2006); see 42 U.S.C. §

2000e-5(f)(1).   Here, pursuant to Title VII 42 U.S.C. 2000e et. seq, Plaintiff filed EEOC charges based on race discrimination, hostile work environment and retaliation and a notice of right to sue letter was received within ninety days of the filing of this lawsuit conferring concurrent jurisdiction upon this Court. The Right to sue letter dated March 16, 2023, and was received by Plaintiff via received USPS mail on March 21,2023. (See Exhibit "A" a true copy of the notice of right to sue letter).   In the exhibit attached to the amended complaint, the date is clearly March 16, 2023, thus, Defendant's assertions are baseless   Thus, a motion to dismiss on this procedural ground is futile.

- **C. Viewed in the light most favorable to the Plaintiff, the amended complaint raises an inference of discrimination, retaliation and hostile work environment**

  1. **Plaintiff's allegations describe a hostile work environment that is severe and pervasive.**

It is black letter law that to plead a case for hostile work environment, in relevant part, a complaint must allege, among other things, that the defendant's conduct "was objectively severe or pervasive." Alvarado v. Mount Pleasant Cottage School District, 404 F. Supp. 3d 763, 780 (S.D.N.Y. 2019).  In evaluating a hostile work environment claim, the fact finder must consider All the circumstances. Oncale v. Sundowner Offshore Services, Inc., 118 S. Ct. 998 (1998); Henson v City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982) (A[T]he district court should not carve the work environment into a series of discrete incidents and then measure the harm adhering in each episode.  Instead, the trier of fact must keep in mind that each successive episode has its predecessors, that   the impact of the separate incidents may accumulate and that the work environment created thereby   may exceed the sum of the individual episodes); Smith v. Kmart, supra, 1996 WL 780490 at *8(using A totality of circumstances standard in age harassment case)There is no Threshold magic   number that courts will apply to determine whether the conduct meets the a severe or pervasive standard.   Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 674 (7th Cir. 1993): Vance v.Southern Bell Tel. & Tel. Co., 863 F.2d 1503, 1511 (11th Cir. 1989).   The courts have applied several general principles.  First, courts consider the number of incidents as a factor, but this is not   alone determinative.   Woods v. Graphic Communications, Union Local 747, 925 F.2d 1195, 1201(9th Cir. 1991); Daniels v. Essex Group, Inc., 937 F.2d 1264, 1273-74 (7th Cir. 1991); Smith v.Northwest Financial Acceptance, Inc., 129 F.3d 1408, 1415 (10th Cir. 1997).

In the case at hand, Plaintiff's allegations, which for the purposes of a motion to dismiss should be accepted as true, are objectively severe and pervasive, and at the very least constitute allegations for a finder of fact to examine and do not raise questions of law.  For instance, the following allegations (which are just illustrative as the amended complaint alleges more) are objectively severe and pervasive, especially taken in the aggregate: being continuously subjected to teaching illegal schedules (teaching 5 periods in comparison to others who taught 3) (Am. Compl. ¶100), being denied materials, resources, support, training, opportunities, and other favorable working conditions to ensure her success such as having a promethean board and a camera facing her white board that set her up to succeed and be at an advantage, being denied COVID time in comparison with her peers (Am. Compl. ¶33-41), being subjected to intimidation by her superior who said out loud "who the fuck does Ms. Byas things she is." (Am. Compl. ¶50-51), being denied overtime

2

opportunities in excess of $30,000 (Am. Compl. ¶65), being denied training so she will be prevented to advance her career and salary while others received the training requested (Am. Compl. ¶68), being given the most challenging students who were also aggressive and were allowed to threaten and humiliate Plaintiff with no consequences (ex: a student who is related to Plaintiff's supervisor was allowed to call her a "slave" and a "nigger") (Am. Compl. ¶92), being humiliated by her supervisor who made her complaint public (Am. Compl. ¶78), being treated unfavorably every single day due to her race (Am. Compl. ¶20-100). Thus, for the foregoing reasons, a motion to dismiss regarding a hostile work environment and disparate treatment claim are futile.

**2) Plaintiff was retaliated against due to her protected activity and subjected to adverse employment actions**

To plead a retaliation claim, a plaintiff must allege that (1) the defendant "discriminated" or "took adverse employment action" against the plaintiff, (2) because the plaintiff "opposed an[] unlawful employment practice." Shi v. New York Dep't of State, Div. of Licensing Servs., 393 F. Supp. 3d 329, 337 (S.D.N.Y. 2019). In the case at hand, in relevant part, Defendant contests Plaintiff's protected activity. However, Plaintiff has pleaded that she engaged in protected activity by complaining of discrimination, retaliation and a hostile work environment. The amended complaint set forth various times in which Plaintiff complained and engaged in protected activity despite the administrator's efforts to create a chilling effect and stop her complaints. For instance, she identifies that on or around November 1, 2020, Plaintiff submitted to HR and Superintendent Edwin Quezada (Hispanic) a detailed complaint using the words "discrimination" and "retaliation." Superintendent Quezada forwarded this complaint to Principal Shaggura and Shaggura retaliated against Plaintiff by changing their schedules on the same day and by increasing their workload. Am. Compl. ¶12. Furthermore, on or about November 1, 2020, Plaintiff complained specifically about discrimination and titled her complaint "Discrimination". Am. Compl. ¶16. It is further explained that "Plaintiff's November 2020 complaints (November 01, 05 and 06) so angered the administration at Gorton to such an extent that Assistant Principal James made efforts to get Plaintiff to transfer from Gorton High School. Id. Moreover, Plaintiff identifies in the complaint that between 2020 and 2022, before Sony Grandoit and Ryan James left Gorton, Plaintiff complained to them constantly about discrimination, retaliation, and hostile environment since it was ongoing. Am. Compl. ¶43. Despite the intimidation Plaintiff continuously suffered, Plaintiff took the courageous step of filing a complaint on or about June of 2021. Plaintiff filed an HR complaint (Robert Voorheis) on or about June 8, 2021 about discrimination, hostile work environment and retaliation at Gorton. This complaint angered Principal Shaggura. Am. Compl. ¶52. Furthermore, on October 5, 2023, Plaintiff complained to Mr. Morales about discriminatory and retaliatory practices and pointed out her observation of discrimination against Ms. Knowles, Gorton's librarian. Am. Compl. ¶116. All of the above constitute protected activity.

In its letter, Defendant also alleges that Plaintiff was not subjected to adverse employment actions. An adverse employment action is whether it would deter a reasonable person from complaining. However, the amended complaint explains many instances in which Plaintiff was retaliated against due to her complaints and sometimes immediately thereafter them. For example, Plaintiff

received an adverse schedule change on about one business day after she complained to Mr. Shaggura and Mr. Morales on or about November 6, 2020, respectively about their protected activity complaints. Am. Compl. ¶15. Furthermore, after her complaints (protected activity), Plaintiff suffered adverse employment actions in that the conditions of her employment changed, she was subjected to teach five courses instead of three, she was added responsibilities, she was denied equipment and training, her support decreased, she was intimidated, isolated, ridicule and subjected to racial slurs, she was denied of opportunities to advance her career, make more money and was denied overtime in excess of $30,000 despite her seniority. Am. Compl. ¶ 25-32, Am. Compl. ¶ 39-116. Clearly, this conduct would deter a reasonable person from complaining. Thus, viewed in the light most favorable to the Plaintiff she was subjected to adverse employment and her case cannot be dismissed.

### 3) **Plaintiff raised a plausible inference of discrimination**

To plead a claim for disparate treatment, a plaintiff must allege, among other things, that he or she "suffered an adverse employment action," and that "the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 151 (2d Cir. 2012), *cert. denied* 569 U.S. 904 (2013). The Amended Complaint has sufficiently allege all of these elements as thoroughly explained in POINT C (2) *supra*. In addition, Plaintiff has been clear enough to describe how the disparate treatment was due to her race and she has pinpointed several names of counterparts with the same position as her who were treated more favorably despite Plaintiff's seniority. To be precise, Plaintiff has identified Caucasian teachers and Jordanian teachers with the same title and less seniority who were treated better than her in all aspects such as be given overtime opportunities, the ability to earn more, training, better schedules, better behaved students, who were included in all activities and meetings, given support and desired equipment etc. Am. Compl. ¶ 25-116. Lastly, Plaintiff has been humiliated due to her race and called names such as "nigger" and "slave" clearly due to her race and the administration has done nothing about it. Am. Compl. ¶91.

Here, Plaintiff has pleaded a prima facie case of discrimination/disparate treatment due to her African American race.

Therefore, Plaintiff respectfully requests that the pre-motion conference be denied because the motion to dismiss would be futile. Thank you for your consideration herein.

Very truly yours

*s/Natalia Kapitonova*
NATALIA KAPITONOVA, ESQ.

cc:   Via ECF
       Joanna M. Topping, Esq., Attorney for Defendant