UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAULETTE BYAS,

                                    *Plaintiff*,

        v.

YONKERS PUBLIC SCHOOLS,

                                    *Defendant*.

No. 23-CV-8437 (KMK)

<u>ORDER & OPINION</u>

<u>Appearances</u>:

Stewart Lee Karlin, Esq.
Natalia Mercedes Kapitonova, Esq.
Stewart Lee Karlin Law Group, PC
New York, NY
*Counsel for Plaintiff*

Andrew Goodman, Esq.
Joanna Marie Topping, Esq.
Abrams Fensterman LLP
White Plains, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Paulette Byas ("Plaintiff") brings this Action against Yonkers Public Schools

("Defendant"), alleging discrimination, retaliation, and hostile work environment on the basis of

race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, and

the New York State Human Rights Law (the "NYSHRL").  (*See generally* Third Amended

Complaint ("TAC") (Dkt. No. 31).)  Before the Court is Defendant's Motion to Dismiss (the

"Motion").  For the reasons set forth below, the Motion is denied in part and granted in part.

## I.  Background

### A.  Materials Considered

"'When considering a motion to dismiss, the Court's review is confined to the pleadings themselves,' because 'to go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 56.'"  *Watson v. New York*, No. 22-CV-9613, 2023 WL 6200979, at *1 (S.D.N.Y. Sept. 22, 2023) (alterations adopted) (quoting *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002)).  "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment."  *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . ., documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (internal quotation marks and citation omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial notice may be taken.'" (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

Plaintiff attaches to her Second Amended Complaint an Equal Employment Opportunity Commission ("EEOC") Determination issued on March 16, 2023.  (*See* Second Amended Complaint ("SAC") (Dkt. No. 18), Ex. A (Dkt. No. 18-1).)  Defendant also attaches exhibits to its briefing, including a complaint filed by Plaintiff with the New York Division of Human Rights ("NYSDHR"), (*see* NYSDHR Compl. (Dkt. No. 20-3)), NYSDHR's subsequent

determination, (*see* NYSDHR Determination (Dkt. No. 20-4)), Plaintiff's related Article 78 petition seeking state court review of NYSDHR's determination, (*see* Art. 78 Pet. (Dkt. No. 20-5)), and the Westchester County Supreme Court's decision dismissing the matter, (*see* N.Y. Sup. Ct. Decision (Dkt. No. 20-6)). The Court will take judicial notice of these documents because it "may consider Plaintiff's filings with agencies and any subsequent agency determination when evaluating the instant Motion because they are all matters of public record." *Lester v. Mount Pleasant Cottage Sch. Union Free Sch. Dist.*, No. 19-CV-5247, 2020 WL 3618969, at *4 (S.D.N.Y. July 2, 2020) (citing *Troise v. SUNY Cortland NY*, No. 18-CV-734, 2019 WL 3817387, at *4 (N.D.N.Y. Aug. 14, 2019) (taking judicial notice of the plaintiff's NYSDHR complaint, NYSDHR determination, and EEOC's right-to-sue letter)); *Sternkopf v. White Plains Hosp.*, No. 14-CV-4076, 2015 WL 5692183, at *4 (S.D.N.Y. Sept. 25, 2015) (taking judicial notice of the plaintiff's complaint to the NYSDHR, a notice of charge from the EEOC, the NYSDHR's determination and order, and the EEOC's dismissal and notice of rights letter); *Muhammad v. N.Y.C. Transit Auth.*, 450 F. Supp. 2d 198, 204–05 (E.D.N.Y. 2006) ("[P]laintiff's EEOC charge and the agency's determination are both public records, of which this Court may take judicial notice." (citation omitted)). The Court also takes judicial notice of Plaintiff's filing before the Westchester County Supreme Court and its related decision. *See Ferranti v. Arshack, Hajek & Lehrman PLLC*, No. 20-CV-2476, 2021 WL 1143290, at *3 (S.D.N.Y. Mar. 24, 2021) ("The [c]ourt may take judicial notice of a document filed before another court . . . .").

The Court notes that it may consider these documents for the fact that they exist, but not for the truth of the matters asserted therein. *See id.* ("The [c]ourt may . . . consider such documents for the fact that they exist, but not for the truth of the matters asserted therein." (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)), *appeal withdrawn*, No. 21-1245, 2021 WL

3575023 (2d Cir. June 23, 2021); *Hutchins v. Solomon*, No. 16-CV-10029, 2018 WL 4757970, at

*7 (S.D.N.Y. Sept. 29, 2018) (taking judicial notice of filings in a court case submitted by a

party "only to establish the fact of such filings and what they contained, not for the truth of the

matter asserted therein" (citation omitted)).

B.  Factual Background

In recounting the relevant factual background, the Court notes that the Third Amended

Complaint largely tracks the Second Amended Complaint, except that it adds allegations

concerning circumstances from November 2023 through June 2024.  (*See* TAC ¶¶ 156–190.)

Accordingly, the following facts are taken from Plaintiff's Third Amended Complaint and

attached exhibits and are assumed to be true for the purposes of ruling on the instant Motions.[1]

---

[1] Federal Rule of Civil Procedure 8 requires that a pleading "must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  Courts in the Second Circuit have dismissed complaints under Rule 8.  *See, e.g.*, *Celli v. Cole*, 699 F. App'x 88, 89 (2d Cir. 2017) (affirming dismissal of 95-page complaint "that was ill structured and largely indecipherable"); *Washburn v. Kingsborough Cmty. Coll.*, No. 20-CV-395, 2022 WL 843733, at *2 (E.D.N.Y. Mar. 22, 2022) (dismissing 62-page complaint where it was "nearly impossible for the Court to determine which facts are relevant to Plaintiff's claims"); *Tsekhanskaya v. City of New York*, No. 18-CV-7273, 2020 WL 5802329, at *6 (E.D.N.Y. Sept. 29, 2020) (dismissing 60-page single-spaced complaint with "rambling, confused and prolix allegations").

Plaintiff's Second Amended Complaint is 35 pages long, (*see* SAC), and the Third Amended Complaint is 46 pages long, (*see* TAC).  The carelessness with which the pleadings were drafted is evidenced by their repetitive allegations.  (*Compare* SAC ¶¶ 119–22 (describing an October 3, 2023, incident) *with id.* ¶¶ 155–56 (recounting the same exact incident).)  This unnecessary repetition was not corrected in the Third Amended Complaint—on the contrary, the latest complaint *introduces* new repetitious allegations.  (*See* TAC ¶¶ 120–22, 139–42, 216–17 (all recounting the same October 3, 2023, incident).)  The Court will not dismiss Plaintiff's Complaints because they are "not the incomprehensible 'labyrinthian prolixity of unrelated and vituperative charges' that Rule 8 was intended to curb," *Harnage v. Lightner*, 916 F.3d 138, 142 (2d Cir. 2019) (per curiam) (citation omitted); *see also Murillo-Roman v. Pension Bds. – United Church of Christ*, No. 22-CV-8365, 2024 WL 246018, at *5 (S.D.N.Y. Jan. 23, 2024) (same), but notes that the Complaints come close, especially given that Plaintiff is represented by counsel.

*See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff has been a science teacher at Gorton High School ("Gorton"), which is part of Yonkers Public Schools, for approximately 19 years. (*See* TAC ¶¶ 5, 8, 11, 116.) Plaintiff is African American. (*See id.* ¶ 7.)

### 1. Ongoing Allegations

In or around June 2019, Principal Shaggura asked Plaintiff whether she wanted to be chair of the school's Science Department and remarked that it could be "[a]nyone but Mr. Haughton," an African-American science teacher who was department chair at the time. (*Id.* ¶ 9.) Plaintiff "saw no justifiable reason" for Shaggura to replace Haughton. (*Id.* ¶ 10.)

Plaintiff alleges that seven years ago, Shaggura removed her from the "P-Tech program," which is a means by which teachers can earn overtime pay. (*See id.* ¶¶ 95, 111, 134.) In contrast, Ms. Fanek ("Fanek") and Ms. Ahn ("Ahn"), both non-African American teachers, have been permitted to participate in the program. (*Id* ¶ 111.) "Plaintiff continues to be excluded from the [P-Tech] program." (*Id.*) Similarly, job and overtime opportunities are posted on Twitter or are advertised via other social media platforms, as opposed to being posted on the door in the mail room in a public manner, leading Plaintiff to allegedly miss out on overtime opportunities. (*Id.* ¶¶ 109, 132.)

Plaintiff is regularly "assigned the most difficult and challenging students," for whom Plaintiff is not provided any support. (*Id.* ¶¶ 84, 88.) While students are typically suspended when they threaten teachers, students that have threatened Plaintiff have not been suspended. (*See id.* ¶ 121.) For example, in June 2022, Plaintiff's request that a student who had threatened her be barred from attending graduation was denied. (*Id.* ¶ 79.) In September 2022, a student,

who Plaintiff believes is related to Shaggura, called Plaintiff and other African Americans "niggers" and "slaves." (*Id.* ¶ 91.) No action was taken against the student and Plaintiff's request to move him to another class was denied. (*Id.* ¶ 93.) Plaintiff alleges that, at an unspecified date, a former student "threatened . . . and subsequently assaulted [her]" and that she is in physical therapy for related injuries. (*Id.* ¶ 89.) Plaintiff also alleges that she was "assaulted by a student and teacher [in] June 2023," and that she had to call the police for help on October 5, 2023, in relation to this assault.[2] (*Id.* ¶ 124.) On October 3, 2023, one of Plaintiff's students threatened to "slap the shit out of her." (*Id.* ¶ 119.) Plaintiff alleges that a meeting concerning the incident with Gorton administrator was "adversarial." (*Id.* ¶ 120.) In November 2023, Plaintiff called for a safety officer to remove "Student X" for yelling and cursing at Plaintiff when she asked whether he had a late pass. (*Id.* ¶ 120.) Assistant Principal Cassano ("Cassano") came to Plaintiff's classroom shortly thereafter and demanded that Plaintiff repeat what Student X said. (*Id.* ¶ 163.) Plaintiff refused and subsequently called the Gorton main office to request coverage for her class "because she was shaking and crying at that point." (*Id.* ¶ 164.) In December, Student X threatened to assault Plaintiff. (*Id.* ¶ 171, 173.) Plaintiff received contradictory guidance from Morales and Assistant Principal Fakhoury ("Fakhoury") about whether Student X would be suspended and whether Plaintiff should file a complaint or call the police. (*Id.* ¶¶ 171–74.)

    2. The 2020-2021 School Year

    On or around November 1, 2020, Plaintiff and Mr. Wilson ("Wilson"), an African American teacher, anonymously submitted a complaint of discrimination and retaliation to

---

    [2] Plaintiff offers no explanation for why she had to call the police four months after the alleged assault.

Human Resources ("HR") and Superintendent Edwin Quezada.  (*Id.* ¶ 12.)  Within a week, Plaintiff and Wilson's schedules were changed, increasing their workload.  (*Id.*)  On November 5, 2020, Plaintiff "emailed a complaint and provided more information" on discrimination by Shaggura and Assistant Principal Jaime Morales ("Morales").  (*Id.* ¶ 17.)  It is unclear whether the November 5 complaint was anonymous.  On November 6, 2020, Morales discussed the November 5 complaint with Plaintiff and stated "that the leaders at Gorton had the authority to make the moves they made."  (*Id.* ¶ 22.)  Plaintiff had "complained of hostile work environment and explained the favoritism toward [Fanek]."  (*Id.* ¶ 23.)  Plaintiff alleges that her schedule was changed and she was assigned "unpaid guidance-related duties" in retaliation for her complaints. (*Id.*)  Shaggura and Morales "took away [Plaintiff's] first period prep and re-assigned [her] to hall duty to walk the floors."  (*Id.* ¶ 26.)  Plaintiff was also moved from "covering the main desk to covering the cafeteria" and instructed to perform guidance counselor duties during third and seventh periods.  (*Id.* ¶¶ 29–30.)  Plaintiff further alleges that Assistant Principal Ryan James ("James") attempted to "get her to transfer out of [Gorton] in direct retaliation for her complaining about discrimination."  (*Id.* ¶ 48.)

In February 2021, while she was at home caring for her son who was sick with COVID-19, Plaintiff was asked by James whether she had sent a letter to the Board of Education about Shaggura.  (*Id.* ¶¶ 35, 37.)  Plaintiff said she had not.  (*Id.* ¶ 35.)  During her time caring for her son, Shaggura told Plaintiff to return to work in accordance with New York's 10-day quarantine requirement, whereas Plaintiff wanted to abide by New Jersey's 14-day requirement.  (*Id.* ¶ 37.)  Plaintiff alleges that white teachers were permitted to take "extended COVID-related time-off." (*Id.* ¶ 38.)

In June 2021, Plaintiff filed an "HR complaint" concerning discrimination, retaliation, and hostile work environment. (*Id.* ¶ 53.) It is unclear where exactly or to whom this complaint was directed. "A few days later," a white teacher, Katherine Marinello ("Marinello"), "made a false accusation against Plaintiff." (*Id.* ¶ 54.) There are no details as to the nature of Marinello's complaint. On June 14, 2021, Shaggura conducted an investigation into Marinello's complaint that Plaintiff characterizes as intimidatory and punishment in response to her June 2021 complaint. (*Id.*)

### 3. The 2021-2022 School Year

During the 2021-2022 school year, a white English teacher "slammed her door" whenever Plaintiff walked by her classroom. (*Id.* ¶ 58.) Plaintiff was also "routinely excluded from school initiatives," such as a "veteran's commemoration program," (*id.* ¶ 66), and did not receive requested technology resources, (*id.* ¶ 71). In September 2021, Shaggura would walk by Plaintiff without speaking to her. (*Id.* ¶ 72.)

### 4. The 2022-2023 School Year

During this year, Plaintiff's schedule was changed to from three to five teaching periods. (*Id.* ¶ 100.) She was "given an excessive number of coverages" and "did not receive public recognition for her accomplishments." (*Id.* ¶¶ 97–98.) In February 2023, Plaintiff "requested a functioning laptop" and noted that Fanek had received a new laptop cart in December 2022 and the assistance of a "push in" teacher, despite Fanek's teaching two fewer periods than Plaintiff. (*Id.* ¶¶ 99, 101.)

### 5. The 2023–2024 School Year

At some point prior to the 2023–2024 school year, Morales replaced Shaggura as Principal. (*Id.* ¶ 125.) Plaintiff was moved from covering the library, as she had done the

previous school year, to covering the cafeteria.  (*Id.* ¶ 130.)  This change contravened a "past practice of not assigning . . . teachers to a 'hot zone' for two consecutive years."  (*Id.* ¶ 130.)  In September 2023, Assistant Principal Shojai ("Shojai") observed Plaintiff teach a class "but did not arrange a post-observation meeting, as is the practice."  (*Id.* ¶ 135.)  In November 2023, Shojai requested that Plaintiff submit a lesson plan, allegedly in violation of a collective bargaining agreement; when they discussed the issue later, Shojai responded that Plaintiff had to provide a lesson plan.  (*Id.* ¶¶ 156, 158.)

On November 15, 2023, "Plaintiff complained to [Morales] about" Cassano's behavior. (*Id.* ¶ 165.)  The next day, Cassano "swiped his fingers up Plaintiff's back in a sexual way . . . ." (*Id.* ¶ 166.)  Plaintiff immediately complained "but nothing was done."  (*Id.* ¶ 167.)

During the school year, Cassano directed Plaintiff to monitor both the male and female restrooms while other teachers on cafeteria duty were permitted to remain in the cafeteria.  (*Id.* ¶ 181.)  When Plaintiff noted the discrepancy in assignment and responsibility, Cassano directed Plaintiff to come up with a rotation schedule for bathroom duty and told other teachers that this was Plaintiff's idea.  (*Id.* ¶¶ 182–83.)

C.  Procedural Background

Plaintiff commenced this Action in Westchester County Supreme Court on June 15, 2023.  (*See* Dkt. No. 1-1.)  On September 25, 2023, the Action was removed to this Court.  (*See* Dkt. No. 1.)  On November 8, 2023, Plaintiff amended her complaint.  (*See* Dkt. No. 10.)  On March 7, 2024, Plaintiff filed the Second Amended Complaint.  (*See* SAC.)  On April 24, 2024, Defendant filed the instant Motion.  (*See* Not. of Mot. (Dkt. No. 19); Decl. of Andrew L. Goodman ("Goodman Decl.") (Dkt. No. 20); Def's Mem. of Law in Supp. ("Def's Mem.") (Dkt. No. 21).)  On May 29, 2024, Plaintiff filed her Opposition.  (Pl's Mem. of Law in Opp. ("Pls's

Opp") (Dkt. No. 24).)  On June 18, 2024, Defendant filed its Reply.  (Def's Reply Mem. in Supp.

("Def's Reply") (Dkt. No. 25).)

On November 6, 2024, Plaintiff filed a motion for leave to file a third amended

complaint.  (*See* Dkt. No. 26.)  Following a hearing on December 18, 2024, the Court granted

Plaintiff leave to file a third amended complaint and set a briefing schedule addressing the new

complaint.  (*See* Dkt. No. 30.)  On January 6, 2025, Plaintiff timely filed her Third Amended

Complaint.  (*See* TAC.)  On February 7, 2025, Defendant timely filed its brief addressing the

Third Amended Complaint.  (*See* Def's Supp. Mem. of Law ("Def's Supp. Mem.") (Dkt.

No. 34); Decl. of Joanna Topping (Dkt. No. 33); Order (Dkt. No. 35).)  On February 18, 2025,

Plaintiff requested that the deadline to file her Supplemental Opposition be extended by one

week to February 28, 2025.  (*See* Dkt. No. 36.)  The Court granted this extension.  (*See* Dkt.

No. 37.)  Plaintiff's counsel failed to comply with the granted extension; instead, they filed a

"consent letter motion" on March 4, 2025, claiming that they "mis-calendared" the extended

deadline and proposed a revised briefing schedule.  (*See* Dkt. No. 38.)  The Court adopted the

revised schedule.  (*See* Dkt. No. 39.)  On March 6, 2025, Plaintiff filed her Supplemental

Opposition.  (*See* Pl's Supp. Mem. in Opp. ("Pl's Supp. Opp.") (Dkt. No. 40).)  On March 28,

2025, Defendant filed its Supplemental Reply.  (*See* Def's Sup. Reply in Supp. (Dkt. No. 41).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration adopted) (internal quotation marks and citation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot.*

*Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

## B. Analysis

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "In adopting this language, 'Congress intended to prohibit all practices in whatever form which create inequality in employment opportunity due to discrimination on the basis of race, religion, sex, or national origin.'" *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 269 (2d Cir. 2023) (quoting *Chambers v. District of Columbia*, 35 F.4th 870, 882 (D.C. Cir. 2022) (Walker, J. concurring)); *Montana v. City of Mount Vernon*, No. 21-CV-260, 2023 WL 8097039, at *6–7 (S.D.N.Y. Nov. 21, 2023) (same).

### 1. Timeliness

Before bringing a suit for employment discrimination in federal court, a plaintiff must first timely file a discrimination charge with the EEOC. To be timely, a claim for discrimination under Title VII must be filed with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see Shields v. NYC Health & Hosps. Corp.*, 489 F. Supp. 3d 155, 161 (E.D.N.Y. 2020) (citing *Pikulin v. City Univ. of N.Y.*, 176 F.3d

598, 599 (2d Cir. 1999) (per curiam)); *see also Zaja v. SUNY Upstate Med. Univ./Upstate Healthcare Ctr.*, No. 20-CV-337, 2022 WL 16834054, at *3 (N.D.N.Y. Nov. 9, 2022) (noting that New York's "State Division of Human Rights makes New York a . . . deferral state for Title VII purposes," and therefore, discrimination claims must be filed with the EEOC within 300 days when the employee knew of should have known of the alleged adverse employment action (internal quotation marks and citation omitted)); *Kirk v. Mount Vernon City Sch. Dist.*, No. 23-CV-7441, 2024 WL 3794591, at *4 (S.D.N.Y. Aug. 13, 2024) (noting that the "300-day deadline applies to charges filed with either EEOC or NYSDHR under [a] workshare agreement" (citing *Scott v. Rochester Gas & Elec.*, 333 F. Supp. 3d 273, 278–79 (W.D.N.Y. 2018))).  However, an exception to the 300-day rule applies if the discrimination constitutes a continuing violation. *Philbert v. City of New York*, No. 21-CV-3119, 2022 WL 94574, at *11 (S.D.N.Y. Jan. 7, 2022); *see also Deravin v. Kerik*, No. 00-CV-7487, 2007 WL 1029895, at *4 (S.D.N.Y. Apr. 2, 2007) (same).  If a continuing violation is found, a court must then "consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred."  *Snowden v. Southerton*, No. 22-CV-514, 2023 WL 3601654, at *7 (S.D.N.Y. May 23, 2023) (citation omitted); *see also Garrison v. Am. Sugar Refin., Inc.*, No. 21-CV-10917, 2022 WL 17850891, at *6 (S.D.N.Y. Dec. 22, 2022) (same).

Plaintiff filed her NYSDHR complaint on March 8, 2022.  (*See* NYSDHR Compl. 22.) 300 days before that date is May 12, 2021.  Defendant argues, therefore, that Plaintiff cannot rely on allegations that occurred before May 12, 2021.  (*See* Def's Mem. 4–6.)  Plaintiff argues that her claims are not time-barred because she has been subjected to a continuing violation.  (*See* Pl's Opp. 2–3.)

> Claims of a discriminatory hostile work environment are subject to the continuing violation doctrine because the very nature of a hostile

> environment claim involves repeated conduct, and incidents that give rise
> to a hostile work environment occur over a series of days or perhaps years
> and a single act of harassment may not be actionable on its own.

*King v. Aramark Servs. Inc.*, 96 F.4th 546, 559–60 (2d Cir. 2024) (citations and quotation marks omitted); *see also Puris v. TikTok Inc.*, No. 24-CV-944, 2025 WL 343905, at *10 (S.D.N.Y. Jan. 30, 2025) (applying the continuing violation doctrine to a hostile work environment claim). Accordingly, the Court will consider all of Plaintiff's allegations for the purpose of her hostile work environment claim. And because Plaintiff's "claims of discrimination and retaliation under Title VII . . . are premised on an allegedly hostile work environment," the claims "are subject to the continuing violation doctrine because they involve repeated conduct . . . ." *Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*, 746 F. Supp. 3d 135, 152 (S.D.N.Y. 2024) (alterations adopted) (quotation marks omitted) (quoting *Banks*, 81 F.4th at 259); *cf. Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 89 (S.D.N.Y. 2024) (noting that the continuing violation doctrine does not apply to claims for discrimination and retaliation unless the claims allege "a common policy under which all the actions were carried out" (quoting *Jackson v. New York State*, 523 F. App'x 67, 69 (2d Cir. 2013) (summary order))).

### 2. Hostile Work Environment

"A hostile work environment claim requires a showing [1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *see also Perkins v. U.S. Dep't of the Treasury*, No. 18-CV-8911, 2022 WL 19772, at *15 (S.D.N.Y. Jan. 3, 2022) (same). This standard applies to Plaintiff's Title VII and NYSHRL claims. *See Lopez v. White Plains Hosp.*,

No. 19-CV-6263, 2022 WL 1004188, at *15 (S.D.N.Y. Mar. 30, 2022).  "At the motion to dismiss stage, . . . a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse."  *Cowan v. City of Mount Vernon*, No. 14-CV-8871, 2017 WL 1169667, at *4 (S.D.N.Y. Mar. 28, 2017) (alterations, quotation marks, and citation omitted); *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 465 (S.D.N.Y. 2023) (same).

The Second Circuit has held that "[p]roving the existence of a hostile work environment involves showing both objective and subjective elements:  the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive."  *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (quotation marks and citation omitted).  In determining whether a plaintiff has plausibly alleged an actionable hostile environment, courts must look at the "totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  "[I]ncidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'"  *Alfano*, 294 F.3d at 374 (quoting *Perry*, 115 F.3d at 149).  "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness."  *Id.* (citation omitted).  "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe.  They are not intended to promote or enforce civility, gentility or even decency."  *Isbell v. City of New York*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018) (quotation

marks and citation omitted).  "[E]xcessive criticism and rudeness do not constitute a hostile work environment."  *Ramirez v. Temin & Co.*, No. 20-CV-6258, 2021 WL 4392303, at *8 (S.D.N.Y. Sept. 24, 2021).

Defendant argues that Plaintiff has failed to show that the conduct complained of was sufficiently continuous or severe to give rise to a hostile work environment claim.  (*See* Def's Mem. 8–13.)  Plaintiff responds that "the conduct as alleged [in her Complaints] must be considered in the aggregate," and that the alleged conduct is, "in aggregate severe and pervasive."  (Pl's Opp. 16.)

Drawing all reasonable inferences in Plaintiff's favor, the allegations in the Second and Third Amended Complaints fail to state a plausible hostile work environment claim and "fall[] short of the kinds of conduct that courts have found to be sufficiently pervasive to alter the conditions of the victim's employment."  *Alexander v. N.Y.C. Dep't of Educ.*, No. 19-CV-7023, 2020 WL 7027509, at *8 (S.D.N.Y. Nov. 30, 2020).  The allegations in the Third Amended Complaint include changes to Plaintiff's schedule, (TAC ¶¶ 26, 47, 100, 130); the scheduling and subsequent cancelation of class observations, (*id.* ¶ 73); the assignment of "the most difficult and challenging students," (*id.* ¶ 84); the assignment of undesirable tasks, (*id.* ¶ 26 (hall duty); ¶ 29 (cafeteria duty); *id.* ¶ 175 (bathroom monitoring)); exclusion from training and other opportunities and resources, (*id.* ¶¶ 11, 68, 77, 95, 134); alleged sexual harassment, (*id.* ¶¶ 166– 67), and racial slurs by students, (*id.* ¶ 91).  These allegations, individually and taken together, fail to establish the kind of severity and pervasiveness that can amount to an actionable hostile work environment claim.  *See Alexander*, 2020 WL 7027509, at *8 (finding that allegations that plaintiff's "duties and responsibilities that were previously hers being reassigned" and "her having been given an excessive workload compared to other teachers'" were, among others,

insufficient to state a hostile work environment claim); *Littlejohn*, 795 F.3d at 321 (rejecting

allegations that employer made negative statements about plaintiff, was impatient and used harsh

tones with plaintiff, distanced herself from plaintiff, required plaintiff to recreate work,

wrongfully reprimanded plaintiff, increased plaintiff's schedule, and was sarcastic to plaintiff as

sufficient to state a plausible hostile work environment claim); *Fleming v. MaxMara USA, Inc.*,

371 F. App'x 115, 119 (2d Cir. 2010) (summary order) (noting that no hostile work environment

existed where "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized

her work, refused to answer work-related questions, arbitrarily imposed duties outside of her

responsibilities, threw books, and sent rude emails to her").

Even assuming that the misconduct alleged is severe or pervasive enough, Plaintiff has

failed to establish causation—that is, that any of the conduct she claims created a hostile work

environment was the result of her race.  (*See generally* TAC; *see, e.g.*, *id.* ¶ 27 (stating

conclusorily that "[t]here was no legitimate reason to take away Plaintiff's first period prep," and

failing to allege that the change was connected to Plaintiff's race); *id.* ¶¶ 35–38 (failing to allege

that the difference in COVID quarantine procedures as applied to Plaintiff and co-workers was

connected to Plaintiff's race).)  In other words, to the extent Plaintiff raises allegations to

establish a connection between the alleged hostile work environment and her race, those

allegations are wholly conclusory.  Courts consistently dismiss similar cases where the plaintiff

makes only conclusory allegations with regard to causation.  *See Sosa v. N.Y.C. Dep't of Educ.*,

368 F. Supp. 3d 489, 516 (E.D.N.Y. 2019) (dismissing a hostile work environment claim where

the plaintiff failed to make any "non-conclusory allegation[s] that suggest[ed] that the conduct

that is the basis of the hostile work environment was as a result of her race or skin color"); *Salas*

*v. N.Y.C. Dep't of Investigation*, 298 F. Supp. 3d 676, 684 (S.D.N.Y. 2018) (dismissing a hostile

work environment claim where the plaintiff "ha[d] not alleged sufficient non-conclusory facts to support her hostile-work-environment claim under Title VII"); *De La Pena v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 418 (E.D.N.Y. 2013) (dismissing hostile work environment claims because the plaintiff "failed to plead that a hostile work environment was created and existed because of his protected status, either race, color, or national origin" and failed to "plead a [causal] connection between his protected status and the alleged hostile work environment"), *aff'd*, 552 F. App'x 98 (2d Cir. 2014) (summary order); *see also Lucio v. N.Y.C. Dep't of Educ.*, 575 F. App'x 3, 5 (2d Cir. 2014) (summary order) (affirming dismissal of hostile work environment claims based on failure to plead facts indicating causation).

The only incident that Plaintiff alleges is tied to her race is a student "call[ing] Plaintiff and other [B]lack students 'niggers' and 'slaves.'" (TAC ¶ 91.) "Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as nigger *by a supervisor* in the presence of his subordinates." *Spencer v. Glob. Innovative Grp., LLC*, No. 17-CV-7604, 2023 WL 6633860, at *5 (S.D.N.Y. Oct. 12, 2023) (emphasis added) (alterations and quotation marks omitted) (quoting *Daniel v. T&M Prot. Res., LLC*, 689 F. App'x 1, 2 (2d Cir. 2017)). Here, however, the epithet was used once by a student, not a supervisor. Further, "[w]here a plaintiff alleges a hostile work environment based on alleged racial discrimination by students, she can only prevail if she 'can show first that a hostile environment existed and second that the school board either provided no reasonable avenue of complaint or knew of the harassment and failed to take appropriate remedial action.'" *Eubanks v. New York City Dep't of Educ.*, No. 18-CV-7877, 2021 WL 1110587, at *18 (S.D.N.Y. Feb. 3, 2021), *report and recommendation adopted*, 2021 WL 1105065 (S.D.N.Y. Mar. 23, 2021) (citation omitted). Plaintiff does allege that "[n]o action was

taken against [this] student." (TAC ¶ 93.) As discussed above, however, Plaintiff has not plausibly alleged that a hostile work environment existed and nothing in her Complaints "raises a legitimate possibility that the harassment by the students was sufficiently severe and pervasive to alter the conditions of [Plaintiff's] employment and create an abusive atmosphere." *Eubanks*, 2021 WL 1110587, at *18 (quoting *Peries v. N.Y.C. Bd. of Educ.*, No. 97-CV-7109, 2001 WL 1328921, at *6 (E.D.N.Y. Aug. 6, 2001)).

Accordingly, because this one incident cannot support Plaintiff's hostile work environment claim, the totality of the allegations is not sufficiently severe or pervasive, and Plaintiff makes no plausible allegation connecting the conduct to her race, Defendant's Motion is granted as to Plaintiff's hostile work environment claim.

### 3. Discrimination

Title VII prohibits discrimination against an employee based on that employee's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The NYSHRL adds a number of other categories, including sexual orientation, gender identity, and others. *See* N.Y. Exec. Law § 296(1). Title VII discrimination claims are evaluated under the familiar and straightforward "three-step burden shifting analysis of" *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400–01 (2d Cir. 1998)). At the first step, a plaintiff must establish a prima facie case of discrimination by showing: "(1) she was within [a] protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Streichert v. Town of Chester, N.Y.*, No. 19-CV-7133, 2022 WL 4449305, at *6 (S.D.N.Y. Sept. 23, 2022) (internal quotation marks and citation omitted). If the plaintiff sufficiently makes a

prima facie case, "the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action.  If the employer satisfied its burden, the plaintiff must then show that the reasons presented was a pretext for discrimination."  *Halkitis v. N.Y.C. Dep't of Educ.*, No. 19-CV-11753, 2022 WL 392911, at *5 (S.D.N.Y. Feb. 9, 2022) (alteration adopted) (quoting *DeMuth v. U.S. Small Bus. Admin*, 819 F. App'x 23, 25 (2d Cir. 2020) (summary order)).

At the motion to dismiss stage, a plaintiff need only "provid[e] a short and plain statement of the claim that shows that she is entitled to relief that gives the defendant fair notice of the discrimination claim and the grounds upon which it rests."  *Freckleton v. Mercy Coll. NY*, No. 22-CV-1985, 2023 WL 2648827, at *5 (S.D.N.Y. Mar. 27, 2023) (alterations adopted) (citations omitted).  Crucially, while "a plaintiff is not required to plead a prima facie case under *McDonnell Douglas* . . . to defeat a motion to dismiss," *id.* (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)), "the elements [of a prima facie case] provide an outline of what is necessary to render [a plaintiff's] claim for relief plausible," *Kirkland-Hudson*, 665 F. Supp. 3d at 450 (internal quotation marks omitted) (quoting *Somersett v. City of New York*, No. 09-CV-5916, 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011)).

Defendant does not contest that Plaintiff is a member of a protected class or that she was qualified for her position.  Defendant does argue that Plaintiff cannot establish a prima facie case of discrimination because she did not suffer an adverse employment action, (*see* Def's Mem. 13–16), and that, even assuming there was an adverse employment action, Plaintiff has not plausibly alleged that Defendant's actions give rise to an inference of discrimination, (*see id.* 16–20).  Plaintiff counters that she has suffered an adverse employment action and has sufficiently

alleged discriminatory intent.  (*See* Pl's Opp. 16–19.)  The Court addresses these arguments in turn.

### a.  Adverse Employment Action

"An adverse employment action is 'a materially adverse change in the terms and conditions of employment.'"  *Mathirampuzha v. Potter*, 548 F.3d 70 78 (2d Cir. 2008) (emphasis omitted) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)).  The Second Circuit has instructed that

> [t]o be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.  Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.

*Id.* (quoting *Sanders*, 361 F.3d at 755).  "[A]dverse employment actions must be 'more than trivial, insubstantial, or petty.'"  *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 113 (S.D.N.Y. 2022) (quoting *Colon v. Fashion Inst. of Tech. (State Univ. of N.Y.)*, 983 F. Supp. 2d 277, 288 (S.D.N.Y. 2013)).

Plaintiff argues that the following allegations constitute adverse employment actions:

> the loss of overtime, changing schedules, losing prep periods, getting assigned undesirable tasks, getting assigned the most difficult students to teach, lack of essential supplies, lack of training, lack of support, receiving additional classes to teach, increased work load, denied the same length of COVID leave, isolated from her peers who were told not to speak to her, denial of the ptech program which resulted in a loss of pay, . . . and being called "niggers" and "slaves" . . . .

(Pl's Opp. 17.)  The Court addresses these in turn.

First, changes in Plaintiff's work schedule and assignment, such as "the loss of overtime changing schedules, losing prep periods, getting assigned undesirable tasks, getting assigned the most difficult students to teach, . . . receiving additional classes to teach, [and] increased work load," (*id.*), do not constitute adverse employment actions.  *See Kirkland-Hudson.*, 665 F. Supp.

3d at 460 (noting that the "assignment of a challenging workload is not sufficiently adverse to support either a discrimination or a retaliation claim" (quoting *Ziyan Shi v. N.Y. Dep't of State, Div. of Licensing Servs.*, 393 F. Supp. 3d 329, 338 (S.D.N.Y. 2019)). Specifically, "the assignment of tasks that are within the description or duties of the position, even if less desirable, do not rise to the level of an adverse employment action." *Wilson v. Conn. Dep't of Transportation*, 706 F. Supp. 3d 327, 343 (D. Conn. 2023) (alteration adopted) (quoting *Nidzon v. Konica Minolta Bus. Sols., USA, Inc.*, 752 F. Supp. 2d 336, 350 (S.D.N.Y. 2010)). While Plaintiff alleges that her new assignments are "considered a menial and undesirable task for a teacher," (TAC ¶ 29), this is akin to evincing "subjective dissatisfaction with her assignments," which is insufficient to show adverse action, *Wilson*, 706 F. Supp. 3d at 344. Further, to constitute adverse action, the change in work assignments should "significantly change[] the employee's responsibilities so as to diminish that worker's role or status, or expose[] the worker to dangerous or extreme conditions not appropriate to her job classification." *Krul v. DeJoy*, 705 F. Supp. 3d 5, 47 (N.D.N.Y. 2023) (citation and quotation marks omitted). Plaintiff has not plausibly alleged such a scenario here; on the contrary, Plaintiff claims she has "performed her responsibilities in an exemplary manner," (TAC ¶ 6), and has received evaluations of "effective" or "highly effective" for the 2022-2023 and 2023-2024 school years, (*id.* ¶ 238).

Next, Plaintiff points to "denial of the [P-Tech] program which resulted in a loss of pay." (Pl's Opp. 17 (referencing TAC ¶ 134).) Because "[t]he denial of [the] opportunity to work overtime or earn greater responsibility may be considered sufficiently adverse to support a discrimination claim," *Boncoeur v. Haverstraw-Stony Point Cent. Sch. Dist.*, No. 20-CV-10923, 2022 WL 845770, at *7 (S.D.N.Y. Mar. 22, 2022) (alteration omitted) (quoting *Roache v. Long Island R.R.*, 487 F. Supp. 3d 154, 171 (E.D.N.Y. 2020)); *Rivers v. N.Y.C. Hous. Auth.*, 176 F.

Supp. 3d 229, 252 (E.D.N.Y. 2016) ("A deprivation of the opportunity to earn overtime can be an adverse employment action."), this can constitute an adverse employment action.

Plaintiff also claims that she requested, but was denied, "training to help advance her career and salary." (TAC ¶ 68.) While "denial of professional training opportunities may constitute an adverse employment action," the plaintiff must "show material harm from the denial, such as a failure to promote or a loss of career advancement opportunities." *Abalola v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 20-CV-6199, 2022 WL 973861, at *8 (S.D.N.Y. Mar. 30, 2022) (quotation marks omitted) (quoting *Trachtenberg v. Dep't of Educ of N.Y.C.*, 937 F. Supp. 2d 460, 468 (S.D.N.Y. 2013)); *cf. Latif v. City of New York*, No. 20-CV-8248, 2024 WL 1348827, at *7 (S.D.N.Y. Mar. 28, 2024) (finding that the denial of training opportunities constituted an adverse employment action where promotions were contingent on training participation). Because Plaintiff has not made such a showing, (*see generally* TAC), this cannot constitute an adverse action.

Plaintiff also points to the denial of "the same length of COVID leave" as an adverse employment action. (Pl's Opp. 17; *see also* TAC ¶¶ 37–38 (alleging that other teachers "received more favorable treatment than Plaintiff as they all received more COVID time than Plaintiff and they were not rushed to come back by the Principal as Plaintiff was").) The Court notes that it is unclear from the face of the Second and Third Amended Complaints whether Plaintiff was, in fact, forced to return to work before the New Jersey quarantine period of 14 days expired. It is similarly unclear whether the two other teachers' "extended COVID-related time-off" was similar to that of Plaintiff's caring for her sick child. (TAC ¶ 37.) Without more, and even drawing inferences in Plaintiff's favor, the vague allegations in the Second and Third Complaint do not suggest an adverse employment action. *Cf. Williams v. N.Y.C. Hous. Auth.*,

No. 18-CV-5912, 2021 WL 1109842, at *14 (S.D.N.Y. Mar. 23, 2021) (noting that the Second

Circuit held with respect to a particular plaintiff that a "decision to deny a request for leave . . . is

not an adverse employment action" (citing *Williams v. N.Y.C. Hous. Auth.*, 335 F. App'x 108,

110 (2d Cir. 2009) (summary order))); *Dinkins v. Mayorkas*, 23-CV-10660, 2024 WL 1806174,

at *10 (S.D.N.Y. Apr. 25, 2024) (finding a vague allegation insufficient to adequately plead an

adverse employment action); *John v. Walmart Store No. 2585*, No. 21-CV-1285, 2023 WL

2346577, at *4 (D. Conn. Mar. 3, 2023) (finding that vague allegations did not elevate a "general

statement that [plaintiff] was denied promotion to the level of an adverse employment action").

Plaintiff claims that "teachers were told to stay away from Plaintiff because she was

'toxic,' and that teachers did, in fact, avoid her. (TAC ¶¶ 81–83.) This is not an adverse

employment action. Being snubbed by coworkers is akin to petty slights or minor annoyances

that are not material adverse actions. *See Brand v. New Rochelle City Sch. Dist.*, No. 19-CV-

7263, 2022 WL 671077, at *14 (S.D.N.Y. Mar. 7, 2022) (finding that a supervisor's distancing

herself from plaintiff, speaking poorly about plaintiff, excluding plaintiff from a meeting, and

favoring other teachers did not constitute adverse employment actions and collecting cases);

*Kurian v. Forest Hills Hosp.*, 962 F. Supp. 2d 460, 470 (E.D.N.Y. 2013) (noting that

"personality conflicts at work that generate antipathy and snubbing by supervisors and co-

workers are not actionable" (quoting *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d

556, 568 (2d Cir. 2011))).

Plaintiff's allegations as to a "lack of supplies" also do not constitute an adverse

employment action. As an initial matter, the Second and Third Amended Complaints are vague

as to the nature of these supplies. To the extent Plaintiff is referring to a "Promethean Board,"

Plaintiff's allegations are contradictory; she initially alleges that she was denied the board, (*see*

TAC ¶ 11), but then also claims she received the board but was not trained on its use, (*see id.* ¶ 104). Further, "failure to provide . . . desired equipment does not constitute an adverse employment action." *Lam v. N.Y.C. Dep't of Educ.*, No. 18-CV-2756, 2019 WL 2327655, at *11 (S.D.N.Y. May 30, 2019); *see also During v. City Univ. of N.Y.*, No. 01-CV-9584, 2005 WL 2276875, at *13 (S.D.N.Y. Sept. 19, 2005) (noting that "allegations regarding inferior supplies do not make out a prima facie case of discrimination for the simple reason that this is not an adverse employment action").

Plaintiff also alleges that a "lack of support" when dealing with difficult students is an adverse employment action. (*See* TAC ¶¶ 88, 102; Pl's Opp. 17.) Not so. "The withholding of resources, without more, does not constitute an 'adverse employment action' for purposes of a discrimination or retaliation claim." *Pattanayak v. Mastercard Inc.*, No. 21-CV-2657, 2022 WL 2003317, at *2 n.1 (S.D.N.Y. June 6, 2022) (citing *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019)), *aff'd*, No. 22-1411, 2023 WL 2358826 (2d Cir. Mar. 6, 2023); *see also Sherman v. Yonkers Pub. Sch.*, No. 21-CV-7317, 2023 WL 137775, at *7 (S.D.N.Y. Jan. 9, 2023) (finding that "assignment of 'difficult' students do[es] not involve a guaranteed employment benefit or a term or condition of employment, such that the [assignment] amounted to a material adverse action").

Finally, Plaintiff cites the single incident of a student's use of a racial slur against her as an example of an adverse employment action. (*See* Pl's Opp. 17.) While a "supervisor's single use of [a] racial slur may alone suffice to establish an adverse employment action in [the] retaliation context," *Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 385–86 (S.D.N.Y. 2014) (quoting *Rivera v. Rochester Genesee Regional Transp. Auth.*, 743 F.3d 11, 26–27 (2d Cir. 2014)), it does not constitute an adverse employment action in the discrimination context, *see*

*Nofal v. IMCMV Times Square LLC*, No. 22-CV-3104, 2024 WL 1138928, at *3 (S.D.N.Y. Mar. 15, 2024) (holding that "one comment regarding Plaintiff's [protected characteristic] is insufficient to qualify as an adverse employment action under Title VII"); *Ogbonna-McGruder v. Austin Peay State Univ.*, No. 21-CV-506, 2023 WL 3572891, at *9 n.11 (M.D. Tenn. May 19, 2023) (noting that "a single act (a slur, attempt at intimidation, etc.) that contributes to a hostile work environment generally would never itself be an 'adverse employment action' for purposes of a Title VII general discrimination claim . . . because 'offhand comments and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the 'terms and conditions of employment'" (citations omitted)), *aff'd*, 91 F.4th 833 (6th Cir. 2024), *cert. denied*, 144 S. Ct. 2689 (2024); *cf. Campbell v. Knife River Corp.--Nw.*, 783 F. Supp. 2d 1137, 1149 (D. Or. 2011) (holding that "being subjected to racial slurs and harassment by co-workers . . . do[es] not, without more, materially affect the compensation, terms, conditions, or privileges of plaintiff's employment in a tangible way").

Plaintiff also alleges that she received a lower evaluation than normal ("effective" and "developing" as opposed to "highly effective"). (TAC ¶¶ 176–78.) A negative performance evaluation can constitute an adverse employment action, but "only if [it] [is] 'accompanied by negative consequences, such as demotion, diminution of wages, or other tangible loss.'" *Smith v. City of New York*, 385 F. Supp. 3d 323, 334 (S.D.N.Y. 2019) (quoting *Siddiqi v. N.Y.C. Health & Hosp. Corp.*, 572 F. Supp. 2d 353, 367 (S.D.N.Y. 2008)). Here, Plaintiff makes no allegations of negative consequences as a result of her worse-than-usual evaluation. (*See generally* TAC.) Accordingly, the evaluation cannot constitute an adverse employment action.

In sum, Plaintiff has adequately alleged one adverse employment action: the denial of participation in the P-Tech program, which amounts to a denial of the opportunity to work

overtime. The Court now addresses whether it occurred under circumstances giving rise to an inference of discrimination.

### b. Inference of Discrimination

"Under Title VII and the NYSHRL, a plaintiff need not prove (or plead) that 'the causal link between injury and wrong is so close that the injury would not have occurred but for the act.'" *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 325–26 (S.D.N.Y. 2020) (quoting *Lenzi*, 944 F.3d at 107). Rather, at this stage, "a plaintiff need only give plausible support to a minimal inference of a discriminatory motivation." *Vega*, 801 F.3d at 84 (citation and quotation marks omitted). "Yet 'a discrimination complaint must still at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed.'" *Johnson v. Rockland Cnty. BOCES*, No. 21-CV-3375, 2022 WL 4538452, at *10 (S.D.N.Y. Sept. 28, 2022) (alterations adopted) (quoting *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)).

A showing of "[a]n inference of discriminatory motivation may be supported directly, such as by statements that an adverse employment action was related to [the] plaintiff's protected class, . . . or indirectly by an allegation that [the] plaintiff was treated different from and less favorably than similarly situated peers." *Roache*, 487 F. Supp. 3d. at 172 (first citing *Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir. 1984), then *Marquez v. Starrett City Assocs.*, 406 F. Supp. 3d 197, 208–09 (E.D.N.Y. 2017)). Further, "[a]n inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). Alternatively, "[the] plaintiff also may create a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together

give rise to an inference of discrimination." *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 611–12 (E.D.N.Y. 2017) (quoting *Vega*, 801 F.3d at 87). "Clearing this low pleading threshold 'entitles the plaintiff to the temporary presumption of *McDonnell Douglas* until the defendant furnishes its asserted reasons for its action against the plaintiff,' the evaluation of which is more appropriately considered at summary judgment or at trial." *Roache*, 487 F. Supp. 3d. at 172 (quoting *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016), then citing *Levy v. Legal Aid Soc'y*, 408 F. Supp. 3d 209, 216 (E.D.N.Y. 2019)).

Defendant argues that Plaintiff has failed to plead an inference of a discriminatory motivation. (Def's Mem. 16–20.) Plaintiff argues that she has adequately pled that she was treated less favorably than a non-African American similarly situated employee. (Pl's Opp. 18–19.)

With respect to the denial of her participation in the P-Tech program, Plaintiff alleges that she has been excluded from the program for seven years, (TAC ¶ 111), whereas "similarly situated non-African American teachers" were permitted to participate in the program, (*id.* ¶ 95). While this may be thin, it suffices to clear the low pleading threshold. *See Littlejohn*, 795 F.3d at 313 (noting that where a plaintiff "alleges that she was replaced by a white . . . employee" who "was less qualified for the position," plaintiff raised an inference of discrimination sufficient to survive dismissal); *Moy v. Napoli Shkolnik, PLLC*, No. 23-CV-3788, 2024 WL 3498131, at *8 (S.D.N.Y. July 22, 2024) (finding that plaintiff's demotion gave rise to an inference of discrimination where she alleged that a less-experienced co-worker outside of plaintiff's protected class was given plaintiff's responsibilities to the point plaintiff was demoted).

Accordingly, Defendant's Motion is denied as to Plaintiff's discrimination claim insofar as it relates to the denial of Plaintiff's request to participate in the P-Tech program.

4.  Retaliation

Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing] against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).  In other words, "Title VII forbids an employer to retaliate against an employee for . . . complaining of employment discrimination prohibited by Title VII." *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006).  Courts analyze claims for retaliation pursuant to Title VII under the familiar framework set forth by the Supreme Court in *McDonnell Douglas*.  *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("Federal and state law retaliation claims are reviewed under the burden-shifting approach of *McDonnell Douglas*.").  "Under the first step of the *McDonnell Douglas* framework, the plaintiff must establish a prima facie case of retaliation."  *Id.* at 844 (citation omitted).  Once the plaintiff has done so, "the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Id.* at 845 (citation omitted).  "The employee at all times bears the burden of persuasion to show a retaliatory motive."  *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014) (citation omitted).  "As with other claims analyzed under the *McDonnell Douglas* framework, the allegations need only give plausible support to the reduced prima facie requirements." *Thomson v. Odyssey House*, No. 14-CV-3857, 2015 WL 5561209, at *20 (E.D.N.Y. Sept. 21, 2015) (alterations, quotation marks, and citation omitted), *aff'd*, 652 F. App'x 44 (2d Cir. 2016).

To establish a prima facie case of retaliation, the plaintiff must show that:  "(1) she was engaged in an activity protected under Title VII; (2) her employer was aware of her participation in the protected activity; (3) the employer took adverse action against her; and (4) a causal connection existed between the protected activity and the adverse action." *Zann Kwan*, 737 F.3d

at 850 (citing *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)).  Accordingly,

"for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that:

(1) defendants discriminated—or took an adverse employment action—against him, (2)

'because' he has opposed any unlawful employment practice."  *Vega*, 801 F.3d at 90 (citation

omitted).  "A plaintiff's burden at this prima facie stage is de minimis."  *Treglia v. Town of*

*Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (italics omitted).

Defendant argues that Plaintiff's complaints do not constitute protected activities for the

purposes of a retaliation claim, (Def's Mem. 20–22), and that all allegations of adverse

employment actions are conclusory, (Def's Reply. 7–8).  Plaintiff counters that her complaints

on November 1 and 5, 2020, and her filing a complaint with the NYSDHR on March 8, 2022,

constitute protected activities.  (Pl's Opp. 20–21.)

### a.  Protected Activity & Employer Awareness

On November 1, 2020, Plaintiff submitted a complaint to Gorton HR that included the

words "discrimination" and "retaliation."  (TAC ¶ 12.)  On November 5, 2020, Plaintiff

submitted a second complaint that "provided more information on how Mr. Shaggura and

Mr. Morales were discriminating against African American Teachers . . . by treating them less

favorably than the non-African American teachers," which clearly suffices as a protected

activity.  (TAC ¶ 17.)  An HR complaint can constitute a protected activity if the complaint

"complains or is critical about the discriminatory employment practices of [the] employer."

*Littlejohn*, 795 F.3d at 318 (alterations adopted) (quotation marks omitted).  Defendant argues

that Plaintiff's November 1, 2020, complaint does not constitute a protected activity because the

complaint "relates only to her allegations of favoritism towards Ms. Fanek."  (Def's Mem. 21.)

Plaintiff's allegation regarding her November 5, 2020, complaint, however, discusses alleged

discrimination against African American teachers and favorable treatment of non-African

American teachers.  (TAC ¶ 17.)  "[A] [p]laintiff's complaint constitutes a protected activity so

long as she articulated the substance of her complaint in such a way that her employer would

'reasonably underst[and]' that it was about unlawful discrimination against her."  *Moore v.*

*Hadestown Broadway Ltd. Liab. Co.*, 722 F. Supp. 3d 229, 255 (S.D.N.Y. 2024) (quoting

*Cardwell v. Davis Polk & Wardwell LP*, No. 19-CV-10256, 2020 WL 6274826, at *31

(S.D.N.Y. Oct. 24, 2020)).  Based on the allegations in the Second and Third Amended

Complaint, and drawing all inferences in Plaintiff's favor, Defendant "should have reasonably

understood that Plaintiff was complaining about unlawful racial discrimination" and Plaintiff has

plausibly alleged she was engaged in a protected activity.[3]  *See Moore*, 722 F. Supp. 3d at 255;

*see also Baez v. Amazon.com Servs., LLC*, 659 F. Supp. 3d 339, 351–52 (E.D.N.Y. 2023)

(finding that a complaint filed with HR sufficed as a protected activity), *appeal dismissed* (June

22, 2023).

---

[3] Plaintiff also appears to argue that her June 8, 2021, complaint to HR about "discrimination, hostile work environment[,] and retaliation at Gorton" constitutes a protected activity.  (*See* Pl's Opp. 21; TAC ¶ 53.)  This allegation, however, is simply too vague to plausibly allege a protected activity, because it is "devoid of any facts that would allow an inference that Plaintiff complained of [race] discrimination."  *O'Connor v. N.Y. State Dep't of Fin. Servs.*, No. 21-CV-828, 2022 WL 3998099, at *7 (N.D.N.Y. Sept. 1, 2022).  Plaintiff's allegation that she was subjected to discrimination and harassment after making a complaint "about discrimination, hostile work environment, and retaliation," (TAC ¶ 53), "is conclusory and does not sufficiently plead that she was engaged in any form of protected activity," *Colas v. City Univ. of N.Y.*, No. 17-CV-4825, 2019 WL 2028701, at *8 (E.D.N.Y. May 7, 2019)).  Further, Plaintiff's allegation that her "complaint angered [Shaggura]," (TAC ¶ 53), amounts to a "conclusory assertion[] of retaliatory motive" that is insufficient "to satisfy the causal link," *Gong v. Sarnoff*, No. 23-CV-343, 2024 WL 3638335, at *9 (S.D.N.Y. Aug. 1, 2024) (internal quotation marks omitted) (quoting *Vinci v. Quagliani*, 889 F. Supp. 2d 348, 358 (D. Conn. 2012)).  Accordingly, the Court will not consider this HR complaint as a protected activity for the purpose of Plaintiff's retaliation claim.

Defendant does not discuss Plaintiff's March 8, 2022, NYSDHR complaint, which is clearly a protected activity. *See Burris v. Hous. & Servs. Inc.*, No. 17-CV-9289, 2023 WL 1966120, at *10 (S.D.N.Y. Feb. 13, 2023) (holding that a NYSDHR complaint constitutes a protected activity); *Freckleton v. Ambulnz NY LLC*, No. 21-CV-4615, 2022 WL 4644673, at *7 (E.D.N.Y. Sept. 30, 2022) (same). Defendant does not dispute that it was aware of Plaintiff's NYSDHR complaint. (*See generally* Def's Mem.; Def's Reply.)

      b.  Adverse Action

As discussed above, *see* supra Section II.B.3.a, the denial of participation in the P-Tech program is the only allegation that constitutes an adverse employment action. The denial of P-Tech participation occurred approximately seven years ago. (*See* TAC ¶¶ 111, 134.) The protected activities discussed above occurred in November 2020 and March 2022. *See* supra Section II.B.4.a. An adverse employment action cannot serve as the basis for a retaliation claim if the action occurred before a plaintiff engaged in a protected activity. *See Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 103 (S.D.N.Y. 2023). Because the adverse action here predates the protected activities, it cannot support Plaintiff's retaliation claim. *See Forrest v. N.Y.C. Hous. Auth.*, No. 22-CV-06480, 2023 WL 3203646, at *8–9 (S.D.N.Y. May 2, 2023) (finding that plaintiff failed to raise a plausible inference of a "causal nexus" between the alleged adverse employment action and protected activity where the adverse action preceded the protected activity (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001))); *Lessambo v. PricewaterhouseCoopers, L.P.*, No. 08-CV-6272, 2010 WL 3958787, at *12 (S.D.N.Y. Sept. 27, 2010) (finding that plaintiff failed to make out a prima facie retaliation case where "there [was] no evidence that [plaintiff] complained of racist remarks," and so "any

retaliation could not have been based on a protected activity"), *aff'd*, 451 F. App'x 57 (2d Cir. 2011).

Accordingly, Defendant's Motion is granted as to Plaintiff's retaliation claim.

### III.  Conclusion

For the reasons set forth above, Defendant's Motion is granted in part and denied in part.[4] Because this is the first adjudication of her claims on the merits, Plaintiff's claims of hostile work environment and retaliation are dismissed without prejudice.  If Plaintiff wishes to file a fourth amended complaint alleging additional facts and otherwise addressing the deficiencies the Court has identified, Plaintiff must do so within 30 days of the date of this Order.  The fourth amended complaint will replace, not supplement, the previous complaints.  The Court previously noted that the Second and Third Amended Complaint are virtually identical and contain many instances of repetitive allegations.  *See supra* n.1.  Plaintiff is cautioned that any future complaint should be drafted with "special heed to the pleading requirements of Rule 8."  *Washburn*, 2022 WL 843733, at *2.

The Clerk of the Court is respectfully directed to terminate the pending Motion.  (Dkt. No. 19.)

SO ORDERED.

Dated:    March 31, 2025
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

---

[4] While neither Party addressed Plaintiff's state law claims, the Court finds that, "[b]ecause [Plaintiff's Title VII discrimination claim] survive[s] . . . Defendant['s] [M]otion to [D]ismiss, so too must her parallel [NYSHRL] claim[]."  *Pesce v. Mendes & Mount, LLP*, No. 19-CV-4922, 2020 WL 7028641, at *6 (S.D.N.Y. Nov. 30, 2020).