UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAULETTE BYAS,

*Plaintiff*,

v.

YONKERS PUBLIC SCHOOLS,

*Defendant*.

No. 23-CV-8437 (KMK)

OPINION & ORDER

Appearances:

Stewart L. Karlin, Esq.
Natalia M. Kapitonova, Esq.
Stewart Lee Karlin, Law Group PC
New York, NY
*Counsel for Plaintiff*

Andrew Goodman
Moore & Goodman, PLLC
New York, NY
*Counsel for Defendant*

Joanna M. Topping
Fullerton Beck LLP
White Plains, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Paulette Byas ("Plaintiff") brings this Action against Yonkers Public Schools ("Defendant"), asserting race-based discrimination, retaliation, and hostile work environment claims. Before the Court is Defendant's Motion to Dismiss the Fourth Amended Complaint ("FAC") in part (the "Motion"). Because the Fourth Amended Complaint's allegations are not meaningfully different than those in the Third Amended Complaint, the Court grants the Motion,

dismissing all but Plaintiff's discrimination claims concerning her alleged exclusion from the P-Tech program.

## I. Background

### A. Factual Background

The following facts are drawn from the Complaint and assumed true for the purposes of the Motion.[1] *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

#### 1. 2020–21 School Year Through 2023–24 School Year

The Court assumes the Parties' familiarity with the factual background of this case through the end of the 2023 school year, as detailed in its prior Opinion & Order on the Third Amended Complaint. *See Byas v. Yonkers Pub. Schs.*, No. 23-CV-8437, 2025 WL 963977, at *2–4 (S.D.N.Y. Mar. 31, 2025). The Fourth Amended Complaint's allegations through this period are substantially the same as those in the Third Amended Complaint. (*Compare* FAC

[1] The Court previously warned Plaintiff's counsel that the Third Amended Complaint "c[a]me close" to violating Rule 8. *Byas v. Yonkers Pub Schs.*, No. 23-CV-8437, 2025 WL 963977, at *2 n.1 (S.D.N.Y. Mar. 31, 2025). The Fourth Amended Complaint's cleats are dusted in the same chalk. Though shorter, it is a textbook "shotgun pleading": It offers 141 uncategorized, varyingly relevant paragraphs of allegations and incorporates every one into every successive count, inviting the Court and Defendant to take their best guesses as to which claims are based on which facts. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–22 (11th Cir. 2015) (describing the two most common types of shotgun pleadings as a complaint "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint," and a "complaint . . . guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"); *see also Jaddo v. Town & City of Stamford*, No. 21-CV-350, 2022 WL 2168077, at *7 (D. Conn. June 16, 2022) (noting where, as here, "a complaint contains multiple counts and each count adopts the allegations of all preceding paragraphs so that the final count of the complaint effectively incorporates nearly the entire complaint itself, the shotgun format may violate Rule 8(a)(2) . . . and Rule 10(b)" (quotation marks omitted)). Plaintiff's own briefing struggles to discern what is relevant: the Statement of Facts, three sentences long in its entirety, simply incorporates the FAC by reference. (*See* Pl.'s Mem. 1.)

¶¶ 1–114, *with* Third Am. Compl. ("TAC") (Dkt. No. 31); *see* Def.'s Mem. 5–7 (explaining the "allegations of the FAC are materially the same as the allegations of the TAC with the exception of added allegations related to conduct that occurred during the 2024–25 school year" and collecting examples); *see generally* Pl.'s Mem. 1 (expressing no disagreement with Defendant's characterization of the FAC).)

2. The 2024–25 School Year

The brunt of Plaintiff's new allegations in the FAC concerns disputes in the Yonkers Federation of Teachers ("YFT"), of which she is a member. Plaintiff became her school's union alternate in October 2024. (FAC ¶ 117.) Tensions at the union began to simmer over after Plaintiff, "as union alternate," "emailed Mr. Morales," the principal, in December 2024 about alleged discrimination against another teacher. (*Id.* ¶ 118.) Morales then allegedly "released [Plaintiff's] lawsuit to teachers and encouraged and condoned a series of attacks against her." (*Id.* ¶ 119.) In one such "attack," another teacher "was overheard bashing Plaintiff in front of students and another staff member," describing Plaintiff in various negative terms. (*Id.* ¶¶ 120, 122.) Plaintiff complained about that teacher's statements to human resources staff, the school superintendent, and to Morales. (*Id.* ¶¶ 121, 123.) Morales declined to investigate Plaintiff's complaint about the teacher's statements. (*Id.* ¶ 122.)

In January 2024, another teacher "verbally attacked and attempted to antagonize [Plaintiff] in a meeting." (*Id.* ¶ 124.) Thereafter, Plaintiff "reached out to" the superintendent to "highlight[] . . . 'racially motivated' attacks against [Plaintiff] by a group of non-black teachers who are in opposition to her lawsuit," but "no action was taken to curtail the attacks." (*Id.* ¶¶ 125–27.) Later in January, "the YFT president called [Plaintiff] and stated that a petition was circulated to remove her as union alternate," for which another teacher was collecting signatures.

(*Id.* ¶¶ 128–29.) Plaintiff complained again to HR and to the superintendent about the "verbal[] attack[s]" earlier that month, claiming she was "being threatened, bullied, and ostracized because she named names in her lawsuit" and was "fighting for her right to be treated with equity." (*Id.* ¶ 130 (quotation marks omitted).) "Multiple teachers" in subsequent staff meetings "stated, [Plaintiff's] lawsuit was angering them and [was] the cause of the petition," and one staff member "physically attacked" another who "spoke up about discrimination and retaliation" in the context of Plaintiff's suit. (*Id.* ¶¶ 131–32.) Plaintiff again "contacted the HR commissioner and the superintendent" in March 2025 about the alleged conduct. (*Id.* ¶ 133.)

Other than the union-adjacent events, Plaintiff claims she experienced several classroom-related indignities during the 2024-25 school year. (*See id.* ¶ 116 (alleging Plaintiff's schedule was changed, perhaps in a way that implicated Plaintiff's disability accommodations, and that Plaintiff "sent . . . an email questioning the change"); *id.* ¶ 134 (alleging that Plaintiff "asked for materials for her classroom to cover the chalkboard," but that Morales told her to do it herself and then emailed teachers to call custodians for help in like situations).)

<u>B. Procedural Background</u>

The Court assumes the Parties' familiarity with the procedural history of this case as detailed in its prior Opinion & Order denying Defendant's Motion to Dismiss the Third Amended Complaint as to Plaintiff's claims that she was excluded from the P-Tech program, and otherwise granting it. *See Byas*, 2025 WL 963977, at *5, *16. Plaintiff thereafter filed her Fourth Amended Complaint on April 30, 2025. (*See* FAC (Dkt. No. 43).) Defendant moved to dismiss in part on September 12, 2025.[2] (*See* Mot. to Dismiss (Dkt. No. 54); Mem. in Supp. re:

---

[2] Defendant's Motion does not seek dismissal of the claims as to which the Court denied the prior motion to dismiss. (*See* Def.'s Mem. 1.)

Mot. to Dismiss ("Def.'s Mem.") (Dkt. No. 56).) Plaintiff filed her opposition on October 15, 2025. (*See* Mem. in Opp'n re: Mot. to Dismiss ("Pl.'s Mem.") (Dkt. No. 59).) Defendant replied on November 12, 2025. (*See* Reply Mem. in Supp. re: Mot. to Dismiss ("Reply") (Dkt. No. 63).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (noting that a district court should only consider the complaint, documents appended to the complaint or incorporated by reference, and matters of which judicial notice can be taken in ascertaining facts for a motion to dismiss).

B. Analysis

1. Statute of Limitations

"An action against a school district, its Board of Education or its officers pursuant to the [NYSHRL] must be brought within one year." *Eaton v. Wayne Cent. Sch. Dist.*, 25 F. Supp. 3d

370, 373 (W.D.N.Y. 2014). Defendant argues Plaintiff's "state law claims arising prior to June 15, 2022"—one year before Plaintiff brought this Action—"must be dismissed as time-barred" because of the one-year statute of limitations. (Def.'s Mem. 11.) The Court previously explained that, drawing all reasonable inferences in Plaintiff's favor at this early stage, she had alleged continuing violations that justified considering allegations dating from before the limitations period. *See Byas*, 2025 WL 963977, at *7. For the same reasons, the Court "will consider all of Plaintiff's allegations" as not time-barred for her hostile work environment, discrimination, and retaliation claims. *Id.*[3]

2. Election of Remedies

Defendant contends election of remedies bars certain of Plaintiff's claims. (*See* Def.'s Mem. 10–11.) The New York State Human Rights Law, on which Plaintiff's fourth and fifth causes of action are based, has an "election of remedies" component, providing "that a person who files a complaint with . . . the SDHR [*i.e.*, the New York State Division of Human Rights] . . . thereby waives his or her right to sue in court." *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011) (citing N.Y. Exec. L. § 297(9)). Plaintiff concedes that because she brought a complaint before the SDHR, election of remedies bars any state-law claims premised on factual allegations preceding the SDHR complaint. (Pl.'s Mem. 4 ("Plaintiff agrees that the state law claims . . . until June 15, 2022, are barred by the election of remedies."); Topping Decl.

[3] Defendant claims Plaintiff "does not dispute that any state law claims arising prior to June 15, 2022 must be dismissed as time-barred," citing to page 4 of Plaintiff's memorandum. (Reply 2.) On the contrary, Plaintiff only concedes that certain state-law claims must be trimmed based on the election of remedies—she argues at length that her claims are not time-barred. (*See* Pl.'s Mem. 2–4.)

¶ 1 (Dkt. No. 55) ("[P]laintiff filed an administrative complaint with the New York State Division of Human Rights . . .").)[4]

But she needlessly concedes several months' worth of allegations, seemingly confusing Defendant's statute of limitations arguments (premised on Plaintiff commencing the suit on June 15, 2023, and the applicable one-year statute of limitations) with Defendant's election of remedies arguments (premised on Plaintiff bringing her claim before the SDHR on March 8, 2022). (*See* Def.'s Mem. 11.) Election of remedies accordingly only kicks in on or before Plaintiff brought her claim before the SDHR on March 8, 2022.[5]

<u>3. Discrimination Claims</u>

Plaintiff asserts Title VII and NYSHRL discrimination claims as the first and fourth counts of the FAC. (*See* FAC ¶¶ 142–43, 148–49.) Discrimination claims "under Title VII and the NY[S]HRL are analyzed using the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*." *Walsh v. New York City Housing Auth.*, 828 F.3d 70, 74–

---

[4] Plaintiff responds to Defendant's statute of limitations argument by claiming the Fourth Amended Complaint includes no allegations predating June 15, 2022, and Plaintiff cites dozens of numbered paragraphs that do not exist in that complaint as evidence thereof. (*See* Pl.'s Mem. 4 (explaining that "allegations in the Fourth Cause of Action were from September 2023 until January 2024," and citing paragraphs 150–81 although the last numbered paragraph in the FAC is paragraph 152).) The FAC clearly does, however, include allegations dating as far back as 2017, (*see, e.g.*, FAC ¶ 9), and each of those allegations is recursively incorporated into every cause of action, *see supra* note 1.

[5] While election of remedies bars state-law claims premised on conduct before Plaintiff brought her claim before DHR, it does not affect her federal claims. *See Harvin v. Manhattan & Bronx Surface Transit Op. Auth.*, No. 14-CV-5125, 2018 WL 1603872, at *3 n.2 (E.D.N.Y. Mar. 30, 2018) ("The election of remedies only bars the NYSHRL and NYCHRL claims; the federal claims . . . are not barred." (citing *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 126–28 (2d Cir. 2002)); *Thomas v. New York City Health & Hosps. Corp.*, No. 02-CV-5159, 2004 WL 1962074, at *1 n.1 (S.D.N.Y. Sept. 2, 2004) ("The election of remedies restriction does not affect claims brought under federal law.").

75 (2d Cir. 2016). At the first step of that framework, "a plaintiff must establish a prima facie case of discrimination by showing: (1) she was within a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Byas*, 2025 WL 963977, at *9 (alterations adopted, quotation marks omitted). At this stage, "while a plaintiff is not required to plead a prima facie case under *McDonnell Douglas* to defeat a motion to dismiss, the elements of a prima facie case provide an outline of what is necessary to render a plaintiff's claim for relief plausible." *Id.* (alterations adopted, quotation marks omitted).

The Court denied Defendant's Motion to Dismiss the Third Amended Complaint as to Plaintiff's Title VII and state-law discrimination claim "insofar as it relates to the denial of Plaintiff's request to participate in the P-Tech program." *Byas*, 2025 WL 963977, at *14. Defendant does not seek dismissal of that claim. (*See* Def.'s Mem. 20 ("[Plaintiff's] discrimination claim should remain limited to the P-Tech program and her hostile work environment and retaliation claims should remain dismissed.").) Other than her exclusion from the P-Tech program, the Court found Plaintiff had not alleged any adverse employment action taken against her. *Byas*, 2025 WL 963977, at *10–13.

That remains the case after the FAC. An adverse employment action is "some injury respecting [the plaintiff's] employment terms and conditions." *Muldrow v. City of St. Louis*, 601 U.S. 346, 359 (2024); *Ashmeade v. Amazon.com*, No. 23-CV-4331, 2026 WL 880645, at *9 (S.D.N.Y. Mar. 31, 2026) (explaining that *Muldrow* requires allegations of "*some* harm"). Here, as detailed above, Plaintiff's new allegations include verbal attacks by other teachers, some directed at her and some not, (*see, e.g.*, FAC ¶¶ 120–22, 124–27, 130); that a petition was circulated to remove her as union alternate, though Plaintiff does not claim the petition was

ultimately successful, (*see id.* ¶ 128); changes to Plaintiff's schedule, (*see id.* ¶ 116); and a lack of help in covering up her chalkboard, (*see id.* ¶ 134). Each of these events either did not involve any action relating to Plaintiff's employer, like the union petition, *see Byars v. Jamestown Teachers Ass'n*, 195 F. Supp. 2d 401, 411–12 (W.D.N.Y. 2002), or was not accompanied by "resulting adverse consequences" to Plaintiff's employment terms and conditions, like the chalkboard incident or the comments, *John v. Brooklyn Eye Ctr.*, No. 22-CV-6190, 2025 WL 317515, at *5 (E.D.N.Y. Jan. 28, 2025), so Plaintiff has still not alleged the requisite adverse employment action to sustain her discrimination claim. *See Byas*, 2025 WL 963977, at *10 (explaining that "changes in Plaintiff's work schedule and assignment" and the "assignment of tasks that are within the description or duties of the position, even if less desirable, do not rise to the level of an adverse employment action"); *Mcloughlin v. Vill. of Southampton*, No. 23-CV-6586, 2024 WL 4189224, at *4 (E.D.N.Y. Sept. 13, 2024) (explaining, even following *Muldrow*, that "[r]equiring documentation for medical leave requests," making "demeaning comments," and other acts that did not "r[i]se to the level of impacting the terms and conditions of [the plaintiff's] employment" were not adverse employment actions).

As previously stated, however, Defendant has not sought the dismissal of Plaintiff's discrimination claims premised on her exclusion from the P-Tech program, which the Court explained *was* an adverse employment action because it denied Plaintiff the "opportunity to work overtime or earn greater responsibility." *Byas*, 2025 WL 963977, at *10 (citing *Boncoeur v. Haverstraw-Stony Point Cent. Sch. Dist.*, No. 20-CV-10923, 2022 WL 845770, at *7 (S.D.N.Y. Mar. 22, 2022)). The Court also previously found—and finds again here, based on the same allegations—that Plaintiff's allegations with respect to the P-Tech program supported at least a minimal inference of discriminatory intent. *Id.* at *14. And Defendant has not contested the first

two elements, *i.e.*, that Plaintiff is a member of a protected class and is qualified for her position. (*See generally* Def.'s Mem. 18–19.)

Plaintiff's discrimination claim therefore survives based on the denial of her repeated requests to participate in the P-Tech program following Plaintiff's election of remedies on March 8, 2022.

4. Retaliation Claims

Plaintiff's third and fifth causes of action are for retaliation under, respectively, Title VII and the NYSHRL. (*See* FAC ¶¶ 146–47, 151–52.) "For a retaliation claim" brought under these statutes "to survive a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) because [s]he has opposed any unlawful employment practice." *Byas*, 2025 WL 963977, at *14 (alterations adopted, quotation marks omitted).

The Court previously dismissed Plaintiff's retaliation claims, finding that while Plaintiff had "plausibly alleged she was engaged in a protected activity," satisfying the second element, she had not alleged any adverse employment action except her exclusion from the P-Tech program, which began well before her protected activity, failing the first element. *Id.* at *15. The FAC's new allegations do not change that outcome because, for the reasons explained above, they still fail to allege that Defendant took an adverse employment action against Plaintiff for her protected activity. *See supra* Part II(B)(3). Accordingly, the Court grants the Motion as to Defendant's retaliation counts.

5. Hostile Work Environment

Plaintiff's second cause of action is a hostile work environment claim under Title VII. (*See* FAC ¶¶ 144–45.) "At the motion to dismiss stage, . . . a plaintiff need only plead facts

sufficient to support the conclusion that she was faced with harassment of such a quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Cowan v. City of Mount Vernon*, No. 14-CV-8871, 2017 WL 1169667, at *4 (S.D.N.Y. Mar. 28, 2017).[6] "The conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 334 (S.D.N.Y. 2020). And "incidents of harassment, generally, 'must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive,'" because "'[i]solated acts, unless very serious, do not meet the threshold of severity or pervasiveness.'" *Stiler v. Amalgamated Life Ins. Co.*, No. 24-CV-8962, 2026 WL 867166, at *20 (S.D.N.Y. Mar. 30, 2026) (first quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014), and then quoting *Keaton v. Conn. Dep't of Rehab. Servs.*, No. 16-CV-1810, 2018 WL 1245728, at *10 (D. Conn. Mar. 9, 2018)).

The Court previously dismissed Plaintiff's hostile work environment claim, finding her allegations, "individually and taken together, fail[ed] to establish the kind of severity and pervasiveness that can amount to an actionable hostile work environment claim" and that Plaintiff "failed to establish causation—that is, that any of the conduct she claims created a hostile work environment was the result of her race." *Byas*, 2025 WL 963977, at *8. Substantially all the allegations in Plaintiff's opposition materials on her hostile work

---

[6] "The Second Circuit has not yet ruled on whether" the Supreme Court's holding in *Muldrow*, 601 U.S. at 354–55, "affects the requirements for a hostile work environment claim." *Hechavarria v. Scorch Bar & Grill*, No. 23-CV-1743, 2025 WL 2476346, at *12 n.9 (E.D.N.Y. Aug. 28, 2025). Because the Parties have not argued otherwise, the Court assumes for the purposes of this motion that the "severe and pervasive" standard for hostile work environment claims survives *Muldrow*.

environment claims—which amounts to a nearly paragraph-by-paragraph recital of the entire FAC—are the same as those in the TAC and, for the same reasons the Court previously discussed, either fail to meet the requisite severity threshold, draw a causal connection to Plaintiff's race, or both. *See id.* at *8–9.

Plaintiff's new allegations continue to fall short of a hostile work environment claim for the same reasons. First, the new allegations' severity and pervasiveness are still below the bar for a Title VII hostile work environment claim. Plaintiff alleges, for example, that two other teachers insulted her: one described her as "disgusting, grimy, a cheater, not a team player," and claimed she did not "support her coworkers," though the FAC is unclear on whether Plaintiff was present for that commentary, (FAC ¶ 120), and another "verbally attacked and attempted to antagonize" Plaintiff at a meeting, (*id.* ¶ 124). Plaintiff also claims she was instructed by Morales to cover up a chalkboard herself when all teachers were later advised to ask custodians to help them do so, and that her schedule was changed. (*See id.* ¶¶ 116, 134.) These allegations, considered alongside those the Court previously found did not amount to the "kinds of conduct that courts have found to be sufficiently pervasive to alter the conditions of the victim's employment," *Byas*, 2025 WL 963977, at *8, still fail to allege the severity and pervasiveness necessary for a Title VII hostile work environment claim. The FAC does not support a reasonable inference that the two new insults (only one of which is laid out in any detail), even viewed in the context of the previous years' allegations, were so severe or occurred so frequently as to effect a change in Plaintiff's working conditions. *See Vega v. Regent Hosp. Linen Servs., LLC*, No. 24-CV-2911, 2025 WL 2644224, at *7 (S.D.N.Y. Sept. 15, 2025) (explaining that while "rude and demeaning comments that occur on a daily basis may be sufficient to support a hostile work environment claim," "sporadic or isolated episodes of name-calling, inappropriate

behavior by a supervisor, and other perceived slights, however regrettable, do not constitute a hostile work environment even if taken as true" (quotation marks omitted and alterations adopted)). The same goes for the chalkboard and schedule incidents, neither of which "was 'extraordinarily severe,'" and Plaintiff did not "allege that they unreasonably interfered with her work performance," though Plaintiff makes clear that they were unwanted. *Luna v. NYC Taxi & Limousine Comm'n*, No. 21-CV-1408, 2022 WL 20319227, at *14 (E.D.N.Y. Sept. 7, 2022); *see also Carvalho v. Assoc. Brands, Inc.*, No. 15-CV-72, 2016 WL 8709809, at *9 (W.D.N.Y. May 13, 2026) (dismissing hostile work environment claim where "minor inconveniences" and "unfavorable job assignments" were "neither severe nor pervasive" and thus "insufficient to establish a hostile work environment").

Second, as before, Plaintiff fails to plausibly allege any of these incidents were connected to her race. Plaintiff has not connected the "verbal[] attack[s]" she mentions, (*see* FAC ¶ 124), to her race—rather, the FAC suggests they arose in the context of her fraught relationship with her union in her role as union alternate, (*see generally id.* ¶¶ 117–18, 128–32). *See Chinnery v. New York State Off. of Children & Family Servs.*, No. 10-CV-882, 2014 WL 1651950, at *12 (S.D.N.Y. Apr. 25, 2014) ("Mere 'workplace bullying' is not enough to give rise to an actionable hostile work environment claim. Rather, there must be a showing that the conduct occurred because of the employee's membership in a protected class."), *report and recommendation adopted*, 2015 WL 1029601 (S.D.N.Y. Mar. 10, 2015); *contra Wilson v. Yonkers Pub. Schs.*, No. 24-CV-184, 2025 WL 2689081, at *9 (S.D.N.Y. Sept. 19, 2025) (finding a plausible connection to the plaintiff's race, along with sufficient severity and pervasiveness to justify a claim, where, *inter alia*, individuals at the plaintiff's workplace "plac[ed] a racially demeaning image of a monkey on [the plaintiff's] desk" and staff emailed the plaintiff "four messages containing

disturbing and degrading gay pornography depicting Black men"). Nor has Plaintiff alleged the changes in her schedule or the chalkboard incident had anything to do with her race. *See Farrar v. Town of Stratford*, 537 F. Supp. 2d 332, 352 (D. Conn. 2008) ("Whatever conflicts there may have been . . . there is no evidence that they were anything but personality conflicts, which are beyond the scope of . . . hostile work environment claims."). So, for this reason, too, Plaintiff again has not plausibly alleged a hostile work environment claim, and the Court grants Defendant's motion as to Plaintiff's second cause of action.

## III. Conclusion

For the reasons set forth above, the Court grants the Motion as to all claims except the discrimination claims concerning Plaintiff's exclusion from the P-Tech program (with the limitations her election of remedies imposes on her state-law claim). Because the Court's previous Order and Defendant's pre-motion letters gave Plaintiff notice of the deficiencies in the Fourth Amended Complaint, which are the same as those in the Third Amended Complaint, the Court does not grant leave to amend a fifth time. *See Smith v. Yoto, Inc.*, No. 25-CV-295, 2026 WL 1031269, at *20 (S.D.N.Y. Apr. 16, 2026). The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 54.

SO ORDERED.

Dated: September 11, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge